## UNITED STATES v. SCOTT.

*(Circuit Court, S. D. Ohio.  October 20, 1885.)*

1. CRIMINAL LAW—EVIDENCE—WITHHOLDING PENSION—REV. ST. § 5485—PAROL
 EVIDENCE OF BEING A PENSIONER INADMISSIBLE.
   Parol evidence that the person from whom the defendant withholds the
 money is a pensioner of the United States is not admissible on an indictment
 under section 5485 of the Revised Statutes.

2. SAME—PENSION CERTIFICATE—LOCAL PENSION AGENT'S BOOKS.
   Neither are the entries in the local pension agent's books, copied from the
 certificate of the pensioner, admissible to prove the fact that the person named
 is the pensioner.  Whether the certificate itself is competent, not decided.

3. SAME—PAROL EVIDENCE OF PENSION CHECKS INADMISSIBLE.
   Neither is it competent to prove by parol that the checks received by the
 government's witness were for pensions due to her.  The checks themselves,
 or legally exemplified copies of them, should be produced.

Indictment.

The defendant was placed on trial for withholding $800 of the pen-
sion money of Mary Martin, in violation of section 5485 of the Re-
vised Statutes of the United States.  She was placed on the witness
stand and detailed the circumstances, showing that the defendant,
who was her son-in-law, obtained her "checks" from the post-office,
and, going together to the bank, she signed them and he got the
money.  They then went to a hotel, and he retained the $800, pay-
ing her the balance.  She was asked if these were her "pension
checks," and said, "Yes."  She was further asked how she "became
a pensioner," and replied that her "son was in the army," etc.  The
defendant objected to this testimony, and gave notice that he would
move to exclude it as incompetent, and directed a cross-examination
tending to show that this transaction was an advancement to him as
part of a legacy to be given by Mrs. Martin's will, etc.  This witness
having retired, the district attorney, without further proof, closed the
case for the government, and thereupon defendant declined to bring
forward any evidence, closed his case, and moved the court to instruct
the jury to find for the defendant, on the ground that there was no
competent proof that the prosecuting witness was a pensioner, or that
the money belonged to the pension fund.  After argument, the court
having intimated that the evidence was incomplete without further
proof of those facts, the district attorney asked leave to introduce the
local pension agent and his books, and was allowed to do this, subject
to defendant's objections which were reserved.  The local agent then
produced a book kept by his predecessor in office, in which, among
others, appeared the name of Mary Martin as a pensioner, the num-
ber and date of her certificate, the amount of pension, etc., in col-
ums ruled for the purpose of showing these particulars respectively.
The agent testified that when a certificate of pension is granted it is
first sent to the local agent, who makes the entries of these particu-

lars from the certificate, and forwards the certificate itself to the pensioner.

*P. H. Kumler*, Dist. Atty., for the United States.

*Dewey Follett* and *B. H. Brooks*, for defendant.

HAMMOND, J., (*orally.*)   In *Clifton* v. *U. S.*, 4 How. 242, the supreme court uses this language:

"One of the general rules of evidence, of universal application, is that the best evidence of disputed facts must be produced of which the nature of the case will admit."

And, again, in *Tayloe* v. *Riggs*, 1 Pet. 591, the same court says:

"The rule of law is that the best evidence must be given of which the nature of the thing is capable; that is, that no evidence shall be received which presupposes greater evidence behind, in the party's possession or power. The withholding of that better evidence raises a presumption that, if produced, it might not operate in his favor. For this reason a party who is in possession of an original paper, or who has it in his power, is not permitted to give a copy in evidence or to prove its contents."

And the courts have laid it down as "an indispensable rule of law that evidence of an inferior nature, which supposes evidence of a higher in existence, and which may be had, shall not be admitted." *Commonwealth* v. *Kinison*, 4 Mass. 646; *U. S.* v. *Gibert*, 2 Sumn. 19; Hane's, Dig. Crim. Law, 138; 2 Abb. Nat. Dig. (N. S.) 437. The rule, however, is not without qualification and is to be reasonably applied. It does not require the strongest possible evidence of the matter in dispute, but only that no evidence shall be given which, from the nature of the transaction, presupposes there is better evidence of the fact attainable by the party. *U. S.* v. *Reyburn*, 6 Pet. 352, 367. It depends in a great measure on the circumstances of the case, and the party is only required to produce that which is the best that the nature of the case, under the circumstances, will admit. Id.; *U. S.* v. *Laub*, 12 Pet. 1, 6.

Now, applying that rule to this case, and we find that our pension acts (Rev. St. §§ 470–474, 4692–4791) give pensions to certain persons under given conditions exactly defined. Both as to the particular persons entitled and the particular circumstances giving the right to a pension, the laws are very precise, and they constitute a system of regulations for the whole subject. The execution of these laws is committed to the executive and to one of the great departments of that branch of the government. Under the secretary of the interior there is a commissioner of pensions and what is popularly known as a "Pension Bureau." To these officials belong the duties of ascertaining the persons entitled to this bounty of the government, the facts on which the claims may rest, and, in a word, all that is necessary to place the money where it belongs. To this end 'the claimant must file his declaration, furnish his proofs, and have his claim "allowed" by the proper officials in the interior department at Washington.

I do not find in any of these sections, nor in the regulations of the

pension office furnished me by the local agent, precisely how the adjudication that one is entitled to a pension is made, nor precisely what record there may be of that adjudication in the office of the commissioner of pensions.   Section 4692, Rev. St., provides.

"Every person specified in the several classes enumerated in the following section, who has," etc., "shall, upon making due proof of the fact, according to such forms and regulations as are or may be provided in pursuance of law, *be placed on the list of invalid pensioners of the United States, and be en-*titled to receive," etc.

Subsequent sections provide for the payment of these pensions to the widow and children or certain dependent relatives of the pensioners who die, including the mother.   These latter sections add to the classes of facts to be ascertained by some official judgment in this department, to which the duty of passing upon them has been assigned.   *First,* there must have been a soldier or sailor disabled in, or in consequence of, his military service; and, *secondly,* a relationship to him established, and he must be placed upon "a list."   This much of an adjudication is provided for by statute, and no doubt there is a carefully preserved and accurately kept record of the whole proceeding and a more or less formal adjudication and judgment on the facts, of the distinct nature of which we are not advised.   But nothing is plainer than that the interior department is a special tribunal of judicial or *quasi* judicial powers appointed by law to ascertain and determine all the facts, and to adjudicate and allow a pension to the party entitled, and that its action is final and conclusive. This was long since decided, in 1849, under our old pension laws, as to other departments charged with similar duties, in the case of *Stokely* v. *De Camp,* 2 Grant, Cas. 17.   Also under our new pension laws, in the case of *U. S.* v. *Schindler,* 10 Fed. Rep. 547, 548.   We cannot retry the question, etc., whether any one is or is not a pensioner in a proceeding like this, either as a matter of prosecution or defense. This is also a general principle applicable to similar tribunals established by congress.   *Comegys* v. *Vasse,* 1 Pet. 193; *Frevall* v. *Bache,* 14 Pet. 95.

In the nature of the case we cannot take Mrs. Martin's judgment as to the fact whether her son was a pensioner, or she a pensioner by representation through him.   If we had jurisdiction to determine the necessary fact, we should be required to take proof as to the circumstances, and see whether the exact conditions prescribed by the acts of congress exist.   To substitute Mrs. Martin's judgment that they exist for proof of the circumstances themselves, would be itself a violation of the rule we are considering, even in the view that they can be proved here by parol at all.   Manifestly, the best evidence is the record of the proceeding as it rests in the interior department, and its adjudication thereon.   Congress has provided, in the most ample way, for the use of these records, and all records of the executive departments, as evidence in the courts, by enacting that "copies of any books,

records, papers, or documents in any of the executive departments, authenticated under the seals of such departments, respectively, shall be admitted in evidence equally with the originals thereof." Rev. St. § 883. I do not say that the original record, or an authenticated copy of it, under this section, is the only competent proof of the fact that one from whom money is withheld is a pensioner, but only that this is the best evidence, and that, as long as that exists, certainly parol proof cannot be substituted for it. The rule under consideration does not always require the best, and it may be that the certificate issued to the pensioner would, if produced, answer the *requirements* of the rule against inferior or secondary evidence. I do not feel called on to decide that question, and especially reserve it until it arises. Here it has not been produced or offered in evidence. I do not wish to be misunderstood on this point. Ordinarily, a certificate of a fact does not stand as proof of it unless made so by a law especially enacted to that end; as, for example, the certificate of a discharge in bankruptcy. It used to be that the discharge could only be proved by producing the record, or a certified copy of it; but congress, seeing the inconvenience, provided that the certificate of discharge should suffice, and this is often done for similar purposes. I do not find any provision in these pension laws, or the regulations, made in pursuance of their authority, for a certificate to the pensioner, except that the commissioner is required to forward to the local agent "the certificate granted in any case." Rev. St. § 4768. Whether this is the original adjudication, and competent as an original document to prove the facts certified, or merely a formal certificate of some other adjudication, for use only in the further administration of the law in the department itself and among its own officials, we need not now determine; and I should not, as at present advised about the facts as to the course of business in giving the certificate, be prepared to determine it. It seems to have been held to be *prima facie* evidence in *Mrs. Alexander's Case*, 4 Ct. Cl. 218.

These remarks are pertinent only because the government's counsel has introduced the local agent's books, the entries in which were taken from the pension certificate sent to him under section 4768 of the Revised Statutes. Certainly this is secondary evidence in its relation to the certificate, if we concede that the certificate is itself competent as primary evidence, which we do not decide. I find no statute, or regulation having the force of a statute, by which these entries in the local agent's book can be given the force and effect of an original record kept by law and proving itself as such when supported by the testimony of its custodian. It cannot be substituted for the certificate from which it was made up, even if that may be substituted for an exemplified transcript of so much of the record at Washington as will prove the necessary fact that this lady was a pensioner. I have found no direct case on the point; but in *Wayne* v. *Winter*, 6 McLean, 344, a similar ruling was made in reference to the patent laws. And

a somewhat analogous, though not at all similar, ruling was made in *Lindsay* v. *Cusimano*, 12 Fed. Rep. 503, 504, in regard to the records of the weather in the signal service office.

The objection as to the parol proof in relation to the pension checks is just as well taken, and for the same reason. Either the original checks should have been produced and proved, or authenticated copies of them, under section 882 of the Revised Statutes, before cited, or other record evidence showing that it was pension money sent to her. Congress every year appropriates an immense fund to pay pensions, and it is guarded from peculation and plunder by the very statute under which this defendant is indicted, among others enacted for a like purpose. This offense is aimed solely at withholding money belonging to that fund. The identity of the fund is an essential fact to be proved. Section 4765 directs how the check shall be drawn, and, when paid, that check is in possession of the government, and proves itself, and cannot be proved by parol. It establishes the identity of the money, and there is a peculiarity about the money essential as an element in the offense; therefore it somewhat differs from ordinary checks, and is of more importance as proof than a bare check for so much money indifferently. We cannot take Mrs. Martin's judgment as to this important fact any more in this matter than the other which we have considered.

And now, gentlemen of the jury, it must be a matter of regret to you, as to the court, that this prosecution must fail in this way. We reasonably know that this old lady is a pensioner, and that this was pension money; for it is wholly unlikely that she could have derived the money from any other source than that she says she did; and if she tells the truth, and the defendant could not prove otherwise, he is certainly guilty, and deserves the severe penalties of this statute. But this case well illustrates our duty as court and jury to *him*. We are not here to convict him because we believe, or feel reasonably sure, that he is guilty, but to give him a fair and impartial trial according to law, and to stand by him, and see that, against his objection, he shall not be convicted upon other than competent proof of the facts alleged against him, and necessary to constitute his offense. We have no higher duty than that,—we perform it as readily for the defendant as for the prosecution. The government has failed to produce the proof of this defendant's guilt, ample as its facilities are for that purpose, and he is entitled to an acquittal at your hands. His anxious but intrepid counsel would not put him in the peril he is in if we should determine this motion against him unless they had confidence that the court and jury would impartially give him the benefit of his advantage over the government, if it be one. He is entitled to it, and we accord it to him.

Verdict "not guilty," and defendant discharged.