## No. 11,957.

STATE EX REL. REYNOLDS & HENRY CONSTRUCTION COMPANY VS. W. A. O'KELLY, TAX COLLECTOR.

Where, after the Supreme Court, in a *mandamus* proceeding, directed against the Common Council of a municipal corporation, has remanded the case, with instructions to it " to levy a tax in favor of relator upon an assessment upon the tax rolls of 1889, but in case the limit of taxation had been reached during that year, or there should be any other reason why the full amount of the tax so ordered assessed could not be assessed and collected on the rolls of that year, that the tax should be levied on the rolls of 1894 "—the Common Council under the decree passed an ordinance directing the collection of the tax upon the roll of 1894, and set on foot the execution of its ordinance through the tax collector of the town—it can not of its own motion (on the ground that it acted in error) repeal the ordinance and check the collection of the tax by the tax collector, though it simultaneously passes an ordinance directing the collection of the tax upon the assessment roll of 1889.

The decree did not send the case back for the exercise of any original right in the Common Council, but for the performance of a specially imposed duty. Both its right and its duty in respect to the matter for which the cause was remanded went no further than the decree, which was at once the source and measure of its right and its duty. In taking action the Council was not acting in the course of its ordinary functions as a common council, but as a special agency selected by the court to do a particular act.

### ON REHEARING.

The Supreme Court has supervision and control over the execution of its own judgment. If the original action taken by the Council had not been, in the opinion of the court, in conformity to its decree, it would, by *supersedeas*, have set the Council right. Cox' Executors vs. Thomas, 11 La. 369; Lovelace vs. Taylor, 6 Rob. 92. And so long after that first action was taken, as it received no instructions to change it, the Council was powerless of itself to do so. It has no legal interest in the matter further than to comply with the order of the court.

Where the tax collector has, under instructions from the city council, discontinued the collection of the tax under the first ordinance, he may be ordered to proceed by a direct order of court in a *mandamus* proceeding directed against him, without the necessity of making the common council a party.

A PPEAL from the Fifth Judicial District Court for the Parish of Ouachita. *Potts, J.*

*C. J. Benton* and *E. T. Lamkin* for Plaintiffs, Appellees.

*Thomas O. Benton*, City Attorney, for Defendant, Appellant.

Argued and submitted November 19, 1895.
Opinion handed down December 2, 1895.
Rehearing refused January 6, 1896.

In Reynolds & Henry Construction Company vs. the Mayor and Council of the city of Monroe, reported in 47 An. 1289, this court affirmed the judgment of the lower court, which had decreed that relators (the Reynolds & Henry Construction Company) were entitled to a tax upon all the taxable property situated within the corporate limits of the city of Monroe, to be levied on the assessment roll of 1889, with the following amendment:

* * * " that the judgment appealed from be amended so as to order an assessment of a tax of five mills on the rolls of the year

1889, and in case the limit of taxation should have been reached that year, or that if there is any other reason why the full amount of the tax so ordered assessed can not be assessed, it is ordered that an assessment of a five-mill tax be made on the rolls of 1894." *

On the 1st of July the city of Monroe adopted an ordinance, in which it was declared that in execution of the decree above stated, a tax of five mills on all the taxable property situated in the city of Monroe was thereby levied to be assessed on the tax roll of 1894, and directed the tax collector to proceed with its collection. The collector gave legal notices by publication, extended the tax on the city roll, and received taxes of those who paid until the 29th of August, when the City Council, in special session, repealed the ordinance of July 1, and ordered the collector to proceed no further with the collection of the tax it had levied. At the same meeting an ordinance was adopted levying a five-mill tax in favor of relators, on the roll of 1889, and directing the tax collector to proceed with its collection. Relators thereupon demanded of the tax collector to proceed with the collection of the tax under the ordinance of July 1. He refused, and an application for a *mandamus* against the tax collector was made.

Relators claim that when the ordinance of July 1 was enacted, it was enacted in compliance with a decree of the Supreme Court, and the subject matter passed entirely beyond the power, control and jurisdiction of the Common Council; that the ordinance was irrepealable; that the repealing ordinance was void and in contempt of the authority of the Supreme Court. That the collection of the tax by the tax collector, in accordance with a decree of the court, was a mere ministerial duty, and that he could be compelled by *mandamus* to perform it, the void repealing ordinance to the contrary notwithstanding; that the writ of *mandamus* is the substitute for the ordinary process of execution to enforce judgment against a municipal corporation or county; that such a judgment can not be executed in any other way; that when the tax was levied by the municipality to which the writ had been directed and in obedience thereto, it becomes the *property* of the person in whose favor it has been levied, and that he has a vested right in the premises which can not be affected by subsequent legislation and repeal. In support of these

* See also 45 An. 1024; 46 An. 1276.—REPORTER.

positions relators cite the case of Riggs vs. Johnson County, 6 Wall. 166-198; the case of Labette County Commissioners vs. Moulton, 112 U. S. 223; 1 Black, 360; 9 Branch, 43-292; 21 Cal. 115; 1 Mit. (Ky.) 174; 12 Wis. 67.

The contention of defendant, that they should have proceeded against the City Council and not against the tax collector, proceeds upon the erroneous idea that the City Council was a party to the contract between relators and the taxpayers of the city of Monroe, and that they had been proceeded against in the litigation as the representative of the taxpayers; whereas, on the contrary, they do not in this matter represent the taxpayers, but have only been proceeded against as one of the instruments provided by the law, through which the contract with the taxpayers is to be enforced. Under Act No. 35 of 1886, in executing the powers conferred upon the *taxpayers (not the City Council)* to incur an indebtedness in aid of public works, the City Council is charged with the performance of the following purely ministerial duties, all of which are enforceable by *mandamus:*

1. Considering and passing upon the petition of taxpayers asking for an election.

2. Ordering or refusing to order an election, as the petition may or may not posses the legal requirements.

3. Proclaiming the result of the election.

4. Levying the tax pursuant to the result of the election, if favorable to the tax.

Relators maintain that in the performance of these duties, the law confers no discretion whatever. That in the execution of this law, the City Council is *pro hac vice* an agency of the State, utilized for this purpose. The action taken is in no sense the action of the municipal corporation, and it is subject to no responsibility—its officers being merely utilized by the State, to effectuate the will of the taxpayers in a matter upon which the law authorized them to express it, and as such are necessary only to compel the performance of purely ministerial duties devolving upon them by statutes of the State.

The application is resisted by defendant on the ground sustained by the District Court, that being simply an officer of the City Council he is bound to obey its orders alone and he insists that if the writ should be directed to any one, it should be against the City Council,

and the fact that that body is not a party to this proceeding at all is fatal to it. He contends, if the legality of the proceedings of the Common Council can be considered in this application for a *mandamus*, that both the facts and the law justified their course. That the action of the 1st of Suly was before the decree of the Supreme Court had become final, and executory, and that it was not of such a character that it could not be revoked or rescinded in case of error —that that action was made in error. That they had a discrétionary power vested in them by the mandate of the Supreme Court, and this discretion, once vested, the courts had no control or power over it, citing American and English Encyclopedia of Law, Vol. 15, p. 1046, and authorities; that the Mayor and City Council in the exercise of their legislative powers could have done nothing less than act as they did. That the tax levied in 1889 amounted to ten mills and the tax already levied in 1894 amounted to fifteen mills.

From the judgment against them, refusing the *mandamus*, the relators appealed.

---

The opinion of the court was delivered by

NICHOLLS, C. J. The first feature of the proceedings below which is to be observed is that they are not original, extra-judicial proceedings, but proceedings taken in the matter of the execution o a final judgment of this court rendered in the matter of a *mandamus* ordered. Art. 629 of the Code of Practice declares that it is for the court, whether appellate or inferior, which has rendered the judgment to take cognizance of the manner of its execution when the proper manner of executing it is to be determined. It is unquestionably our duty to see that the *mandamus* which issued in the last branch of this case, when before us, be obeyed. If by the decree of this court the levying of a tax of five mills on the assessment of 1894 had been ordered, and the Common Council had remained perfectly inactive in the premises, it is clear that judicial proceedings would have been taken to enforce the decree of the Supreme Court. The remedy for this inaction would not have been the vain renewal of *mandamus* proceedings, but proceedings for contempt of court.

The same result would have followed if the council, after initiating proceedings for the purpose of execution by the employment of a sub-agency (rendered necessary from the fact that the Common

Council itself could not do the particular work needed) had, after steps had been taken by this sub-agent to carry out the decree of this court, given peremptory orders to him to cease all further action. In such case the Council would have been as liable to contempt proceedings as if they had not moved at all. Should such proceedings have taken place, joining as a party thereto the tax collector (who, we will assume, had ceased operations under orders of the council), the latter would not have been so joined for the purpose of having the council in this new proceeding be decreed to revoke its staying order to him, and to instruct him through a new order to proceed under the original ordinance, but for the purpose of receiving from this court itself a direct order to proceed. The Council would not be before the court for the purpose of receiving orders to revoke its staying order, but for that of being punished for contempt.

It is argued that the decree of this court was not absolute—that it left open, subject to the exercise of the discretion of the Common Council, whether the tax should be levied on the tax of 1889, or the the tax of 1894, and that, having that discretion, neither the Council nor any one acting under its direct orders, could be controlled in the exercise of that discretion. The court in this instance directed the Council to ascertain certain facts, and on such ascertainment to have a tax levied on the assessment of 1889 or 1894, as those facts would justify. The Council acted upon the particular subject matter thus referred to them, levied a tax of five mills upon the assessment rolls of 1894, and set on foot the machinery necessary for the collection of the tax. The sole matter left uncertain by our decree was thus fixed, and became thereafter substantially written into the decree. If it could be said that there was a discretion conferred upon the Council in the selection of the particular years upon which the tax should be levied, that body had acted upon that discretion, performed the special duty with which it was charged, and there was no attempt to control it in the exercise of its original discretion. The question is whether, after having exercised the power or duty entrusted to it, it can subsequently reverse its action and stay proceedings because it may suppose that its duty was incorrectly performed (5 Cal. 627). We do not think it was charged with the duty of correcting its own mistakes, if mistakes it made. There would be no end to litigation if such a doctrine were true. When the Council levied the tax it was ordered to levy, the subject matter passed out

of its hands. It had no further legal interest in the premises. It had performed the specific duty imposed upon it, and its connection with the levying of the tax ceased. Darcantel *et al.* vs. Slaughterhouse Co. *et als.*, 44 An. 644; 20 Atlantic Reporter, 61.

We are of the opinion that the judgment appealed from is erroneous.

It is therefore ordered, adjudged and decreed that the judgment appealed from be and the same is hereby annulled, avoided and reversed, and it is now ordered and decreed that a writ of *mandamus* issue, directed to W. A. O'Kelly, commanding him to proceed with the collection of the tax ordered to be levied by this court in the judgment rendered by it on the 17th of June, 1895, in the matter of Reynolds & Henry Construction Company vs. The Mayor and City Council of Monroe, No. 11,835, in accordance with the decree of this court, and the ordinance of the City Council of the City of Monroe, passed on the first day of July, 1895.

It is further ordered that appellee pay the costs of both courts.

## On Rehearing.

The Council is in error in respect to the position it occupied after our decree was sent back to the District Court. Our decree did not send the case back for the exercise of any original right in the Council, but for the performance of a specially imposed duty. Both its right (if such it may be styled) in respect to the subject matter for which the cause was remanded, and its duty in regard thereto, went no further back than the decree of this court. That decree was the source and measure, both of its right and duty. In taking action under the decree, the Council was not acting in the course of its ordinary function as a Common Council, but as a special agency selected by the court to do a particular act.

The Supreme Court has supervision and control over the execution of its own judgment. If the original action taken by the Council on the remanding of the case had not been, in the opinion of the court, in conformity to its provisions, it would, by superscedeas, have set the Council right. (Cox' Executors vs. Thomas, 11 La. 369; Lovelace vs. Taylor, 6 Rob. 92.) And so long after that first action was taken, as it received no instructions from us to change its course, it was powerless of itself to change that action. It has no legal interest in this matter further than to comply with the order of this court. Refused.