NICHOLLS, J.
Matheo Songy and Leopold Songy, applicants for the writ of mandamus, allege in their petition (which they verify by affidavit):
“That on the 24th day of September, 1905; at Frellsen Station, in the parish of St. Charles, in this state, and within the jurisdiction of the Twenty-Eighth judicial district court of this state, _ at the hour of about 5:30 p. m., one Maurice Elfer, one Octave Elfer, one André Elfer and one Ffank Lebceuf, all four maliciously conniving in the intent to commit the crime of murder, did willfully, feloniously, and with malice aforethought, kill and murder one Albert Mercier, the uncie of your second named relator. That the said crime was committed in the presence of your second named relator, and was one of the most cold-blooded murders ever perpetrated in this state.
“That your second named relator, together with the deceased and one Charles Songy, who were waiting for the arrival of the Mississippi Yalley train to return to New Orleans, after having spent the day with relatives in said parish of St. Charles, were quietly sitting along the railroad track in conversation with friends, when suddenly the above-named parties, armed with shot guns, approached them, and upon reaching a spot about 30 feet from your second named relator leveled their guns to their shoulders and shouting, ‘All those not in the crowd clear out!’ and deliberately fired at said Mercier and others who were peaceably sitting and standing along said railroad track above referred to.
“That besides killing said Mercier, the said Elfers et al. shot and dangerously wounded one Charles Songy, and also shot one Matheo Songy, Jr., and a colored man named Sam Watson, who was standing near, and shot at other parties who escaped in the cane field, which was near at hand. That the body of the deceased, Mercier, was fairly riddled with buckshot, and that the said Maurice Elfer et ah, after having accomplished said crime, inspected the body to make sure that he was dead, and in the presence of your second named relator cursed and abused the corpse of the deceased.
“Relators now represent that they employed counsel, and that a telephone message was sent to his honor, Judge J. L. Gaudet, of the Twenty-Eighth judicial district of this state, at his residence in the parish of St. Charles, requesting him to meet your relators and their attorney at the courthouse in the parish of St. Charles, for the purpose of making affidavits against the above-named persons for murder; and upon receiving answer from the honorable Judge Gaudet that the coroner of the parish had already made affidavit against one of the accused for manslaughter and against the others for accessories to manslaughter, and that he had ordered the release of the accused upon their furnishing bond in the sum of $1,000 each, and would not entertain any other affidavit, your first named relator, on the 3d day of October, 1905, accompanied by his attorney, called upon his honor, Judge Gaudet, at his residence in the parish of St. Charles and requested to be permitted to make affidavit against the above parties for murder, which request the said Judge Gaudet took under advisement, with the understanding that he would meet vour relator and his counsel in the parish of Jefferson the following Monday, which was October 9th, the first day of the term of court in said parish, at which time he would pass upon said request for making said affidavit.
“That on said 9th day of October your second named relator appeared at the courthouse in the pai'ish of Jefferson, together with his counsel, when, after hearing argument of counsel for relator and also from counsel for the accused, the honorable Judge Gaudet again took the matter under advisement, and on the 13th day of October, 1905, said judge refused to accept said affidavit for the reason by him set forth in his written opinion which is annexed hereto. Your relators respectfully submit that the taking of the affidavit in such matter is a ministerial duty which the court is called upon to perform, and is not discretionary; that the judge in refusing said affidavit bases his opinion on the case on the fact that the coroner’s jury brought in a verdict of manslaughter against the accused, and that the coroner, in making said affidavit, was guided by said verdict.
“Relators now respectfully submit that the rendering of a verdict by a coroner’s jury is illegal, null, and void, the only matters to be inquired into by them being as to the cause of death and at whose hand the deceased met his death, and that in rendering said verdict of manslaughter the coroner’s jury acted ultra vires, as any opinion or conclusion reached by them as to the degree of guilt is founded upon testimony which is only hearsay evidence and would not go to the juxw on the trial of a case. See State v. Tate, 50 La. Ann. 1183, 24 South. 592; State v. Duffy, 39 La. Ann. 419, 2 South. 184.
“That, the affidavit made by the coroner in charging the accused Octave and André Elfer and Frank Lebceuf of accessory to manslaughter, a crime unknown to law, should not have been entertained, and that the whole proceedings of said coroner’s jury are unprecedented and illegal, and should not have been entertained nor considered by the court.
“That the refusal of said judge to entertain the affidavit tendered him, is arbitrary, a denial of justice, and works ixxreparable injury to your relators, and that there exists no other remedy at law than a writ of mandamus for which they now pray.
“That due notice of this application for a writ of mandamus has been served upon his *497 honor, Judge J. L. Gaudet, and counsel for accused.
“In view of the premises and the annexed certificate considered, your relators pray that a writ of mandamus issue herein, directed to the honorable J. L. Gaudet, Judge of the Twenty-Eighth judicial district of Louisiana for the parish of St. Charles, commanding him to accept, entertain, and act upon the affidavit of relators against the above-named parties for murder, or that he show cause to the contrary, if any he can or have, on such day and at such hour as this honorable court may order.
“And relators further pray for costs and for general relief.”
“Affidavit.
“State of Louisiana, Parish of St. Charles.
“Before me, the undersigned authority, personally came and appeared Leopold Songy, of the parish of 'Orleans, in this state, who being duly sworn deposes and says: That on the 24th day of September, 1905, at Erellsen Station, in the parish of St, Charles, La., and within the jurisdiction of the honorable the Twenty-Eighth judicial district court of the parish of St. Charles, in the peace of the state then and there being, one Maurice Elfer, one Octave Elfer, one André Elfer, and one Erank Lebceuf, all four maliciously conniving and conspiring in the intent to commit the crime of murder, did willfully, feloniously, and with malice aforethought kill and murder one Albert Mercier, contrary to the forms of the statutes of the state of Louisiana in such cases made and provided and against the peace and dignity of said state.”
“Wherefore your appearer charges the said Maurice Elfer, Octave Elfer, André Elfer, and Prank Leboeuf with the crime of murder, and prays that they all four be apprehended and further dealt with according to law.”
On reading this application the- judge of the Twenty-Eighth judicial district court was ordered to show cause, if any he had, why the mandamus prayed for should not issue. The Attorney General and the district attorney of the district and the parties in interest were directed to he notified.
The district judge for answer to the rule referred the court to the written reason assigned by him in refusing to entertain the affidavit attached to relator’s petition for a mandamus. Further answering, he declared that the issue presented to the court was whether the taking of an affidavit was simply a ministerial duty, or • whether it was a judicial function involving discretionary powers. Article 96 of the Constitution provides that:
“E-xcept as herein provided no duties or functions shall ever be attached by law to the Supreme Court, Courts of Appeal or district courts, or to the several justices and judges thereof, except such as are judicial.”
Section 1010, Rev. St. 1870, provides that:
“Whenever it shall be made to appear by the oath of one or more credible witnesses that a crime has been committed, etc., it shall be the duty of the judge to cause the accused to be arrested.”
“Again the credibility of the witness or witnesses is left to the sound discretion of the judge.
“In this case the coroner, after an investigation into the killing, made an affidavit charging the accused with manslaughter. Is he not as credible a witness as the relators, who come in and aver that the crime is not manslaughter, but murder? State v. Touchet, 46 La. Ann. 827, 15 South. 890.
“My contention is that the only power vested with authority to present the accused for prosecution before the court either for murder or manslaughter is the grand jury of the parish of St. Charles, and having secured the appearance of the accused before that body, in the exercise of what I conceive to be the sound legal discretion vested in me by law, I submit the matter to the court.”
The written grounds of refusal to which the attention of the court is directed were as follows:
“Edgard, La., October 13, 1905.
“The affidavit attached was presented to me by Mr. Livaudais, counsel employed to prosecute the accused named in said affidavit, and I refused to accept it for the following reasons, to wit:
“(1) Because an investigation into the killing of Albert Mercier by said accused had been instituted by Dr. Y. Lehmann, coroner of the parish of St. Charles, who held an inquest over the body of the deceased, and his jury, after hearing the evidence, returned that Maurice Elfer was responsible for the killing as principal and the others as accessories, and charging them with manslaughter.
“(2) Because the coroner swore to an affidavit against said accused charging them with manslaughter, and upon their application for bail I fixed the bond at $1,000 each for their appearance before the court on the second Monday of November, 1905, to answer any charge which the grand jury called to meet on that day will return against them.
“(3) Because I am satisfied that the bond thus furnished will secure their appearance before the court at any time to answer to any *498 indictment which may be preferred against them.
“(4) Because I consider that the object of a second affidavit is simply to have them incarcerated, and will no more subserve the ends of justice than the one already made against them; the grand jury, which is to meet shortly, being the only authority competent to present said accused before the court for prosecution either for murder or manslaughter as the case may be.
“Counsel above named having declared to me his intention of applying to the honorable the Supreme Court for a mandamus, I have thus stated my reasons for refusing to accept the affidavit that the court might pass upon the question, and hereby waive counsel’s notice of intention to apply for the writ.”
The Attorney General has filed an appearance in which he states:
That “he had not been notified, either officially or otherwise, of the proceedings which had been had in respect to the homicide set out in the petition of relators, or the character of such proceedings, nor had he been called upon in his official capacity to take any action in behalf of the state of Louisiana or in respect to the prosecution of the persons charged with the commission of said homicide concerning the same.
“That therefore he is not in a position to inform this honorable court officially as to the circumstances under which the homicide in question was committed, nor whether the same was such as to warrant the arrest of the persons charged therewith for the crime of willful murder.
“The Attorney General desires, however, to inform this honorable court that upon the face of the petition for mandamus herein and in the interest of public justice there would seem to be no good and sufficient reason for the district judge to refuse to receivé an affidavit against the parties charged with said homicide for the crime of murder, and thereafter, in order to determine the nature and character of the offense, if any, arising out of said homicide, to hold a preliminary examination as required by law, and thereupon to discharge the persons accused, or release them on bail, or send them before' the district court for trial without bail, as the facts and circumstances of the case may, after such a preliminary examination and hearing, warrant him in doing.
“That in the opinion of the Attorney General neither the district judge in his answer thereto, nor the defendants themselves in the case of State v. Maurice Elfer et al. in their answer, have shown any good reason why said judge should refuse to receive an affidavit preferred against said defendants for the crime and offense of murder, but that in respect to all such matters the Attorney General would suggest to this honorable court that, as the district attorney for the Twenty-Eighth judicial district has been notified of the application for mandamus, he will doubtless be able to inform this honorable court as to the action that the state desires should be taken in respect to any further affidavit being made in the matter.
“Wherefore, the Attorney General submits the foregoing in compliance with the order of this honorable court.”
The district attorney has taken no action in the premises.
We understand the contention of the district judge to rest upon this proposition: Because the coroner of the parish of St. Charles, through an inquest over the body of Albert Mercier, caused an investigation to be made as to the fact of his death and the cause and the means thereof; because the coroner’s jury returned that he had not died a natural death, but that he had been killed, and Maurice Elfer was responsible for the killing as principal and the others as accessories, ' and declared that by reason thereof they were guilty of manslaughter; and because of the further facts that the coroner, acting either on the conclusions of the jury or his own conclusion derived from the evidence taken at the investigation, had filed an affidavit charging the parties named with manslaughter, and that he (the judge himself) acting either on said conclusions of the jury or the affidavit of the coroner on consideration of the evidence adduced at the inquest, had admitted the said parties bail— therefore the legal situation and state of affairs was forcedly fixed thereby, until the matter should be brought before the grand jury and investigated by that body.
The position on that subject taken by the judge is not supported by law.
It is not claimed or pretended that the parties named have ever been arrested or that any preliminary examination of the ease has ever been made by the judge himself; but, on the contrary, it would appear that the parties have been admitted to bail by the judge without any investigation by him on the mere force and strength either of the conclusions of the coroner’s jury that the *499 parties were guilty of no higher crime than manslaughter, or a like conclusion by the coroner as evidenced by his affidavit, or by reason of the consideration of and action by the judge upon the evidence which had been adduced at the inquest.
We do not think that any of the grounds set up by the judge warranted him in refusing to take the affidavit of the relators when they requested him to do so.
It was his duty to have taken the affidavit, caused the parties to be arrested, and proceeded to have had a preliminary examination made as to the actual facts of the case. On that examination he was not restricted by the conclusions of either the coroner’s jury or the coroner, or any affidavit which had been made by a coroner, as to the action which he should take as the result of his investigation. If the evidence taken on the preliminary examination made by him should disclose facts calling, in his opinion, for a charge, not of manslaughter, but of murder, he should have governed himself accordingly, and have ordered the imprisonment of the parties until discharged in due course. The existence of an affidavit charging the parties with a lighter offense than was called for by the facts would not stand in the way of a charge of murder against the parties.
It would be a condition of things subversive of the proper administration of justice if the coroner’s jury, or the coroner, or both, were able by their acts or conclusions to fix the legal situation and the course to be followed in the premises. It would open the door to great abuse and possible partiality, should such a course be permitted. There was no more reason for the district judge to be tied down by the action of the coroner’s jury, or the coroner, or governed by the evidence taken at the inquest, than there would be for the grand jury itself, when called upon to investigate into the facts of the case, to be tied down by what the coroner or the coroner’s jury may have thought about the criminality or degree of criminality of the parties, or by what the judge himself may have thought or done in respect to that subject prior to their investigation.
The duty of the grand jury would be to examine of itself and for itself (by means of all the witnesses who may have knowledge thereof) into all the facts of the case, and to take such action as in its opinion these facts ' would legally demand.
The coroner’s jury were without authority or power or jurisdiction to determine (should there be any criminality on the part of the parties named) what the degree of that criminality was, and their action in that respect was a nullity, and the action of the district judge, in making such action or the evidence taken at the inquest the basis and authority for admitting the parties to bail, was itself a nullity, and should have been disregarded, when subsequently a party or parties cognizant of the facts, or claiming to be personally cognizant of the facts, as an eyewitness, were prepared to make affidavit, and offered to make affidavit charging them with the crime of murder.
It is suggested by the district judge in his answer that his action in the premises was judicial, not ministerial, and we infer that he claims that therefore he is not subject to a mandamus. The fact that the act asked to be done by the judge was a judicial one does not exempt him from being ordered to perform it, if that act be one which he is legally required to perform.
It is claimed that there may be cases where the judge could not be called upon to take the affidavit of a party charging another with crime. That may be true, but the judge does not disclose or show that the present case is one of that kind. It is suggested that mandamus is not the proper remedy. Ordinarily when a judge, called upon to do a judicial act, entertains the application, *500 but decides that the occasion does not authorize or justify the doing of the act asked, the remedy of the party aggrieved is through an appeal; but that is not forcedly the only remedy. Under the supervisory authority and control over inferior courts conferred upon the Supreme Court by the Constitution of 1898, there may be special and exceptional cases requiring immediate and prompter action to secure a proper administration of justice.
We hold this case to be one of that kind. Blanc v. Murray, 36 La. Ann. 162, 51 Am. Rep. 7.
It is suggested in a brief filed by counsel on behalf of the parties sought to be charged with murder that the relators in this case, being private parties, have no sufficient direct and special interest in the subject-matter complained of to authorize them to invoke the aid of this court, but we think they have.
If it was both the right and the duty of the relators to present their affidavit to the judge, they were authorized to demand judicially the judge’s action upon the same, and, being refused, to bring by mandamus into active operation the agencies furnished by the state for the .administration of criminal justice.
We are of the opinion that the application herein for mandamus is well founded, and should be granted, and that the writ prayed for should be issued, and it is hereby so ordered and decreed.