(42 South. 506.)

No. 15,852.

STATE ex rel. LYNCH v. BOARD OF TRUSTEES OF FIREMAN'S PENSION & RELIEF FUND.

(Feb. 12, 1906. On Rehearing, Nov. 12, 1906.)

1. MUNICIPAL CORPORATIONS — FIREMEN — PENSIONS—PERSONS ENTITLED.

Act No. 43, p. 51, of 1902, created the board of trustees of the fireman's pension and relief fund, and designated disabled firemen and their widows and children as the parties entitled to pensions from the pension fund. The twenty-third section of the act declared that it should take effect immediately after its promulgation, but provided that no pension should be withdrawn therefrom until the sum of $20,000 should be to its credit. The third section declared that the board of trustees should have the exclusive control and management of the fund, and make all needful rules and regulations for its government in the discharge of its duties, and should hear and decide all applications for relief or pensions under the act, and its decisions should be final and conclusive, and not subject to review, except by the board. The board rejected the application of the relatrix on the ground that the only widows entitled to pensions were those whose husbands had died after the fund should have had $20,000 standing to its credit, and in the Supreme Court maintained that its decision to that effect was final, and not subject to review by the courts.

*Held*, the board was in error in both respects. The law itself fixed the class of persons entitled to relief from the fund, and did not leave the determination of that question to the board. No power was given to it to make changes in that respect.

The right was, however, granted it to decide whether, as a matter of fact, the parties applying for relief had brought themselves into the class provided under the terms and conditions fixed by the statute. The object of the statute was not to confine the class of persons entitled to relief to widows whose husbands should die after the fund should reach $20,000, but to prohibit the payment of the pensions until after the fund had reached that sum. If the board had any discretion as to the action it was primarily authorized to take, its action after it had once exercised its discretion as to the questions of law involved was open to review. State ex rel. Construction Co. v. O'Kelly, 18 South. 757, 48 La. Ann. 33.

On Rehearing.

2. MANDAMUS—PENSION BOARD—EXERCISE OF JUDGMENT.

Mandamus will not lie to review or reverse the decision of a pension board on an application for a pension, as such a decision necessarily involves the exercise of judgment on the law and facts of the case. Moreover, Act 43, p. 51, of 1902, specially provides that the decision of the defendant board shall be final and conclusive, and shall not be reviewed or reversed, except by the board itself.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 33, Mandamus, § 134.]

Nicholls, J., dissenting.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Walter Byers Sommerville, Judge.

Action by the state, on the relation of A. J. Lynch, for writ of mandamus to the board of trustees of the fireman's pension and relief fund. From an order granting the writ, defendant appeals. Reversed, and suit dismissed.

James Clark Henriques, for appellant. John Joseph Reilley and William Stirling Parkerson, for appellee.

Statement of the Case.

NICHOLLS, J. The plaintiff alleged that her husband, Andrew J. Lynch, to whom she was married in the city of New Orleans on the 13th day of February, 1893, departed this life on the 4th day of November, 1904; that

at the time of his death he was a member of the New Orleans fire department; that he had been for many years a member of said fire department, and at the time of his death was occupying the position of senior assistant chief, and was earning a salary of $175 per month; that he performed his duties faithfully, efficiently, and conscientiously; that he faithfully complied with the rules and regulations of the board of fire commissioners of the city of New Orleans, created by virtue of the provisions of Act 83, p. 111, of the Session of 1894; and that at the time of his death he was a member in good standing.

That in 1902 the Legislature of the state of Louisiana, with the object of pensioning disabled firemen and their widows and minor children, by virtue of Act No. 43, p. 51, created a board of trustees of the fireman's pension and relief fund for the city of New Orleans, and that in 1904 said act was amended in minor particulars by Act No. 17, p. 20, of the Session of 1904.

That by virtue of section 3 of Act No. 43, p. 52, of 1902, the said fireman's pension and relief fund derived most of its revenue by assessing each member of the fire department 1 per cent. of the salary of each member; that relator's husband, Andrew J. Lynch, paid from month to month the sum of $1.75, the amount of the 1 per cent. assessment on his salary as senior assistant chief; that this money was deducted on the 25th day of each month, and paid into the fireman's pension and relief fund; that in addition thereto, and for the purpose of deriving revenue of said fireman's pension and relief fund, 50 cents a month was deducted from the salary of relator's husband on the 10th day of each and every month while a member of said fire department; that the said Andrew J. Lynch having performed his duties faithfully, and having contributed his assessment levied for the purpose of replenishing the fund aforesaid, his widow,

Mrs. Andrew J. Lynch, pursuant to the provisions of section 12 and section 15 of the said Act No. 43, pp. 54, 55, of 1902, and section 23 of Act No. 17, p. 21, of 1904, presented in due form to the board of trustees of the fireman's pension and relief fund her application to be placed upon the pension roll as widow of the said Andrew J. Lynch, and accompanying her application with the necessary proof of her marriage as provided by law; that under the provisions of section 12 of Act No. 43, p 54, of 1902, it was the ministerial duty of the board of trustees of the fireman's pension and relief fund to recognize her as the widow of Andrew J. Lynch, and to direct the payment from said pension and relief fund monthly, and as long as relator remain unmarried, the sum of $15.

That at the time her application was submitted, June 20, 1905, the fireman's pension and relief fund, having on hand the requisite amount of funds as provided by section 23 of Act No. 17, p. 21, of 1904, was properly organized for the purpose of putting said fund in operation; that pursuant to the provisions of section 2 of Act No. 43, p. 52, of 1902, the following named persons composed the board of trustees of said fireman's pension and relief fund, to wit, Herman Meister, president, John P. Sheehan, secretary-treasurer, Thomas O'Connor, vice president, and Thomas O'Neil and James Donovan; that the duties of said board of trustees of the fireman's pension and relief fund for the city of New Orleans are ministerial, and are prescribed and defined by law.

That on July 12, 1905, the board of trustees of the fireman's pension and relief fund met pursuant to call; that the application of Mrs. Andrew J. Lynch to be placed upon the pension roll was read, and, after a discussion, a motion was made that the application of Mrs. Andrew J. Lynch be refused.

That the action of said board of trustees was arbitrary, and that she (relator) was unjustly discriminated against, and that the action of said board of trustees of the fireman's pension and relief fund was in violation of the law.

Relator further shows that she has no adequate remedy at law, and that a mandamus is necessary to protect and enforce her rights in the matter; that her interest herein is in excess of $2,000.

In view of the premises and the annexed affidavit, relator prays that an alternative writ of mandamus issue herein, directed to the board of trustees of the fireman's pension and relief fund and the individual members thereof.

An alternative writ of mandamus was ordered and served upon the defendants.

The board and individual members of the board appeared in court, filing an exception and contingently an answer or return to the petition for mandamus, in which they averred that relator's petition disclosed no cause of action or right of action against the board, and more particularly against its individual members. Contingently answering, they averred that respondent, under section 2 of Act No. 43, p. 52, of the Session of the General Assembly of the state of Louisiana of 1902, had the right to make rules and regulations for the government of said board in the discharge of its duties, and had the right to decide all applications for relief or pensions under this act, and its decisions on said application were final, and not subject to review or reversal, except by the board itself.

That on July 12, 1905, the said board of trustees of the fireman's pension and relief fund met pursuant to call; that the application of Mrs. Andrew J. Lynch, relator herein, was duly taken up by said board in open meeting, was given careful consideration, and, after discussion, by resolution adopted at said meeting, her application was refused by a vote of said board, as appears by a certified copy of an extract of the minutes of said board, which is hereto annexed as part hereof and marked "Exhibit A."

That the Legislature by the act creating said board gave it the right to decide on all applications for pensions, and made its decision final and conclusive, subject to no review; that therefore this honorable court had no jurisdiction to inquire into the subject-matter of the application of relator herein, and the action taken thereon by respondent board; that the said board was lodged by the Legislature with discretion as to the granting of any pension or relief, and this honorable court could not issue a mandamus to a public board as to the matters requiring the exercise of official judgment, or resting on judicial investigation or discretion; that courts cannot by mandamus act directly upon public officers, or guide and control their judgment and discretion in matters committed to their care in the ordinary discharge of their official duties; that respondent board does not simply perform ministerial duties, but, by the terms of the act creating it, it is made the sole judge of all applications therefor, having examined into the matter submitted to it for its examination, and, having determined the same, its action is not subject to review by the courts, as it was an exercise of judgment.

2. That Act No. 43, p. 51, of 1902, creating the said board, and Act No. 17, p. 20, of 1904, amendatory thereof, by section 23 of said act, provides that no pension could be paid, or money drawn from the fund thereby created for any purpose at all, until $20,000 should be to the credit of said fund; that Andrew J. Lynch died on November 14, 1904; that at that time there was not to the credit of said fund said sum of $20,000, and therefore at the time of his decease no money was due to any member of the fire department, nor his widow, orphan, or mother; that, under the

terms of section 23 of the said act, the act went into effect after its promulgation, in so far as to authorize the collection of the fund, but in so far as the payment of any pension or relief was concerned it was not operative until $20,000 had been raised; that if the said act were to have retroactive effect and apply to widows, orphans, and mothers of deceased firemen, or to superannuated or decrepit firemen, the financial scheme on which the act is based would be obliterated and annihilated, and the same would be immediately dissipated, and in a very short space of time would cease for the lack of funds; that it was the intention of the Legislature, and expressly stated in the act, that the pension was not to be operative until the sum of $20,000 was reached, which amount was virtually the capitalization of collections made, from time to time, until such amount was reached.

In view of the premises, respondents pray that the alternative writs of mandamus herein filed be refused, the relief sought denied, and that there be judgment in favor of respondents, dismissing relator's suit at her costs, and for all general relief.

On trial it was agreed and admitted that the relatrix herein was married to Andrew J. Lynch on the 13th day of February, 1893; that Andrew J. Lynch died in this city on the 4th day of November, 1904; that at the time of his death he was a member of the New Orleans fire department; that he occupied the position of senior assistant chief, earning a salary of $175 per month; that he always performed his duties during his lifetime faithfully, efficiently, and conscientiously, and that he complied with the rules and regulations of the board of fire commissioners of the city of New Orleans, created by virtue of the provisions of Act No. 83, p. 111, of the Session of 1894; that at the time of his death he was a member in good standing; that 1 per cent. of the salary of Lynch and

of all firemen was deducted on the 25th of each and every month from the time of the passage of the act up to the date of his death; that the relatrix herein presented her application in due form to the board of trustees of the fireman's pension and relief fund on June 20, 1905; that on July 12, 1905, the board of trustees of the fireman's pension and relief fund met pursuant to call; that there was a quorum present; that the application of Mrs. Andrew J. Lynch to be placed on the pension roll was read, was discussed by the board, and a motion was adopted by the board refusing her application and refusing to place her on the pension roll for the sum of $15 a month; that it was only on May 24, 1905, that the sum of $20,000 had been accumulated in said fund, and prior to the said date the said sum of $20,000 had not yet been reached; that the relatrix herein is still unmarried.

The district court ordered and decreed that the alternative writ herein issued be made peremptory, in so far as to order the board of trustees of the fireman's pension and relief fund to pay to relatrix, Mrs. Andrew J. Lynch, the sum of $15 per month, or such pro rata as may be due to her out of the funds in hand, without infringing upon the sum of $20,000 to be paid by said board before the payment of any pension, said pension to begin on the 12th day of July, 1905, and to continue as long as the relatrix remains unmarried; all costs of these proceedings to be paid by respondent.

The board of trustees appealed.

## Opinion.

The defendant board questions the right of the relatrix to have a mandamus issue from the district court compelling it to recognize and pay her the pension which she claims. They contend that under section 2 of Act 43, p. 52, of 1902, which created it (the board), its action in refusing to recognize a pension to the person applying for it is final and con-

clusive, and not subject to review or reversal, except by the board.

The section of the law on which this claim to exemption is based is as follows:

Section 3 of Act 43, p. 52, of 1902:

"That the said board shall have the exclusive control and management of the fund mentioned in the first section of this act, and of all money donated, paid or assessed for the relief or pensioning of disabled, superannuated or retired members of the fire department, their widows and minor children or widowed mother, and shall assess each member of the fire force not to exceed one per centum of the salary of such members, to be deducted and withheld from the monthly pay of each member so assessed, the same to be placed by the treasurer of said fund, subject to the orders of such board. The said board shall make all needful rules and regulations for its government, in the discharge of its duties and shall hear and decide all applications for relief or pensions under this act, and its decisions on such applications shall be final and conclusive, and not subject to review or reversal except by the board. The board shall cause to be kept a record of all its meetings."

This section must be read in connection with the first section, which reads as follows:

"Be it enacted, etc., that the city of New Orleans having a paid fire department, one (1) per centum of all revenues collected or received by said city from licenses issued by said city shall be as a fund for the pensioning of disabled and superannuated members of the fire department, and the widows and orphans of deceased members of the fire department and to relieve said members in case of temporary disablement."

It will be seen that the law itself has fixed the class of persons to whom the pension shall be paid and does not leave the determination of that question to the board. The board has been given no discretion on that subject. It is not authorized to make any change in that respect. So far as that is concerned, the law itself controls the situation. The law has, however, left to the board the decision whether as a matter of fact the person applying for a pension has brought herself into and under the class provided for under the terms and conditions fixed in the statute. If the decision of the board on that issue be adverse to the application, the facts of the case and the conclusion reached thereon are declared final. The board, in this case, does not pretend that as a matter of fact relatrix has not established the correctness of her claim, if her construction of the law be well founded. This is conceded, as is shown by the admissions made on the trial and copied into the transcript. The respondent board refused, however, to accept her construction of the statute, and insisted that their own construction was correct and final. This they were never granted the power to finally determine. The construction of law is vested in the courts whenever an issue is raised thereupon.

As the different applications for pensions were submitted to the board for action, it necessarily had the right to pass primarily upon the entire merits of each claim; but, in so far as its decisions of questions of law were involved in reaching its conclusions, that branch of their conclusions was open to review and rectification. The board had original power to determine the matters submitted to it; but, after it had exercised and acted upon its discretion, the legal correctness of its action was subject to attack by the parties claiming adverse legal rights. See State ex rel. Construction Co. v. O'Kelly, 48 La. Ann. 33, 18 South. 757. Our Reports are filled with cases where boards, having original power to hear and determine questions submitted to them, and having to that extent some judicial discretion, have had the correct exercise of their discretion questioned and reversed.

An illustration of that is found in the case of State v. Elfer, In re, etc., 115 La. 964, 40 South. 370.

This case, when it reaches us, presents questions of law alone. The first legal proposition submitted to us is that the only widows entitled to a pension under the law are those whose husbands have died since the fund out of which the pensions were to be paid had reached the sum of $20,000.

Respondent's contention on that point is based upon the twenty-third section of Act 43, p. 57, of 1902, as amended by section 8 of Act No. 17, p. 20, of 1904, which amendment reduces the sum from $50,000, originally fixed, to $20,000.

The section referred to declares:

"This act to take effect immediately after its promulgation, provided that no pension shall be paid or money drawn from said fund for any purpose until the sum of fifty [now twenty] thousand dollars shall be to its credit, and provided further that the rules and regulations of the mutual benefit and reserve fund now existing shall continue in full force and effect until the above-mentioned sum is obtained when the said mutual benefit and relief fund shall be merged in the fireman's pension and relief fund."

Respondent's proposition, that the widows authorized to participate in the funds are only those whose husbands have died since the fund has reached the sum of $20,000, receives no support from the section of the law relied on.

There is a very clear distinction between a statute limiting the right of participation in the fund to widows whose husbands have died since the pension fund has reached the sum of $20,000 and a statute conferring the right of participation in the pension fund upon the widows of firemen who would become widows after the date of the act, but simply postponing the date of the payment of their pensions until the pension fund shall have reached the sum of $20,000. The intent of the statute was obviously not to limit the class of persons who would be entitled to pensions under the general terms of the first section of the act of 1902, but to prohibit payment of those pensions out of the fund until it should have reached the sum of $20,000.

A very considerable portion of defendant's answer is argumentative in character, seeking to prove that it could not have been intended by the General Assembly to have provided a pension for the wives of firemen who might die from and after the date of the act

and before the fund had reached the sum of $20,000, inasmuch as the number of pensioners might be so great as to frustrate the whole plan. Should the plan provided by the statute fail of its purpose, as the respondent sets out as a possibility, it would none the less be the legislative plan which was adopted. The board would be in no wise responsible for the result. It was for the General Assembly itself to have guarded against that contingency. It appears from the language of the statute itself that the Legislature anticipated a possibility of the fund being insufficient in amount at some particular date to pay in full the pensions entitled to be paid out of it. To meet that contingency the thirteenth section of the statute (as does also the judgment of the district court) provides that, if at any time there shall not be sufficient money in such pension or relief fund to pay each person entitled to the benefit thereof the full amount per month as hereinbefore provided for, then an equal percentage of such monthly payments shall be made to each beneficiary until the said fund shall be replenished to warrant the payment in full of each of said beneficiaries. The board makes no allegation tending to show a condition of things such as is here alluded to, and, were such condition to occur, the judgment appealed from affords ample relief.

We may say incidentally that it could not be reasonably supposed that the General Assembly, after diverting from the date of the act a portion of the pay of each fireman for the accumulation of the fund, would deprive his family from all benefits in the fund raised. We are of the opinion that the judgment appealed from is correct, and it is hereby affirmed.

PROVOSTY, J., dissents.

### On Rehearing.

LAND, J. Act 43, p. 52, of 1902, § 3, declares that the defendant board "shall hear

and decide all applications for relief or pensions under this act, and its decisions on such applications shall be final and conclusive, and not subject to review or reversal except by the board." The act itself thus disposes of this mandamus proceeding, unless its provisions be held unconstitutional, and they have not been assailed on that ground. The relatrix claims a pension under the act, and her complaint is that her application, after discussion and consideration, was refused by the board in violation of the law. It is plain that the functions of the board are not ministerial, but quasi judicial. In executing the act it was necessary for the board to construe its provisions. In the case at bar the board decided that the relatrix was not entitled to the benefit of the act because her claim accrued before the pension fund had accumulated $20,000 to its credit.

The question is whether this court can in a mandamus proceeding inquire into the correctness of the rulings of the defendant board. The statute itself answers, "No." Our former opinion practically nullifies that provision of the act which declares that the decisions of the board shall not be subject to review or reversal, except by the board itself. The act itself provides for the gratuitous distribution of a fund to be created out of the revenues of the state, and in our opinion it was competent for the Legislature to annex the condition that the decisions of the board on all applications shall be final and conclusive. The assessments paid by the husband of the plaintiff went into the mutual benefit and relief fund, which the act in question continued in full force and effect until the sum of $20,000 was obtained and placed to the credit of the pension fund proper. See section 23. In the interim the board was authorized to appropriate from the funds the sum of $500, to be paid to the beneficiary, whenever an active or retired fireman shall die or be killed. See section 31.

As section 23 specially provides "that no pensions shall be paid or money drawn from said pension fund for any purpose until the sum of $20,000 shall be to its credit," it follows necessarily that the "funds" contemplated by section 21 belong to the mutual benefit and relief fund. It was stated at the bar, and not denied, that the relatrix has already received $500 as a beneficiary under section 21. Be this as it may, her only equity was against said relief fund, to which her husband had contributed, and she had no vested right or interest in the pension fund to be created out of revenues belonging to the state. Hence there was nothing to prevent the Legislature from annexing to the grant the condition that the decisions of the board should be final and conclusive. We think that the same conclusion can be drawn from the general principles of law governing the issue of the writ of mandamus against executive officers and boards when performing acts not merely ministerial, but involving the exercise of judgment. This question was fully considered by the Supreme Court of the United States in Decatur v. Paulding, 14 Pet. (U. S.) 497, 10 L. Ed. 559. That was a mandamus suit to compel the Secretary of the Navy to grant Mrs. Decatur a pension under an act of Congress. The relief prayed for was denied. We make the following extracts from the opinion handed down in that case by Chief Justice Taney, to wit:

"The duty required by the resolution was to be performed by him as the head of one of the executive departments of the government, in the ordinary discharge of his official duties.

"In general, such duties, whether imposed by act of Congress or by resolution, are not mere ministerial duties. The head of an executive department of the government, in the administration of the various and important concerns of his office, is continually required to exercise judgment and discretion. He must exercise his judgment in expounding the laws and resolutions of Congress under which he is from time to time required to act. * * *

"The court could not entertain an appeal from the decision of one of the Secretaries,

nor revise his judgment in any case where the law authorized him to exercise discretion or judgment. Nor can it by mandamus act directly upon the officer, and guide and control his judgment or discretion in the matters committed to his care, in the ordinary discharge of his official duties."

This doctrine is as applicable to an executive board as it is to an executive officer.

In United States v. Scott (C. C.) 25 Fed. 472, the judge, citing several authorities, said:

"But nothing is plainer than that the Interior Department is a special tribunal, of judicial or quasi judicial powers, appointed by law to ascertain and determine all the facts, and to adjudicate and allow a pension to the party entitled, and that its action is final and conclusive."

In State ex rel. Fouche v. Verner, 9 S. E. 113, decided by the Supreme Court of South Carolina in 1889, it was held that, as a pension board in the examination of an application is required to exercise discretion, its judgment, approving or disapproving it, cannot be controlled by mandamus. The court cited Decatur v. Paulding, 14 Pet. (U. S.) 497, 10 L. Ed. 559, as the leading case, which had been affirmed in many subsequent cases, among them, Brashear v. Mason, 6 How. (U. S.) 92, 12 L. Ed. 357; U. S. v. Seaman, 17 How. (U. S.) 225, 15 L. Ed. 226; U. S. v. Guthrie, 17 How. (U. S.) 284, 15 L. Ed. 102; Gaines v. Thompson, 7 Wall. (U. S.) 347, 19 L. Ed. 62.

We have cited the three cases supra because they were pension cases, but the same rule is of general application, and has been formulated by Mr. High as follows, viz.:

"That rule is that in all matters requiring the exercise of official judgment, or resting in the sound discretion of the person to whom a duty is confided by law, mandamus will not lie, either to control the exercise of that discretion, or to determine upon the decision which shall be finally given." Extraordinary Legal Remedies, § 42.

In State ex rel. Moulin v. Mayor, 49 La. Ann. 1324, 22 South. 354, this court said:

"The writ of mandamus may issue to compel a public officer to perform a ministerial duty, but it must clearly appear that the duty is one which from its character leaves no discretion in the officer to do or not to do."

A pension board, which hears and determines applications for pension, certainly does not perform a merely ministerial duty. As was said by the Supreme Court of South Carolina in Fouche v. Verner, supra:

"To approve or disapprove the application necessarily implies the duty of examination, both of questions of law and fact, for the purpose of determining whether the application should be approved or disapproved; and this necessarily implies the exercise of judgment."

In the very case at bar the rights of the relatrix are doubtful. The trial judge held that she was not entitled to the absolute pension claimed in her application, but only to a conditional pension. This circumstance demonstrates that the determination of her claim required the exercise of judgment by the defendant board.

Both the statute and general principles of jurisprudence forbid us to review or reverse the decision of the pension board. Our interference in this case would be a precedent for the exercise of appellate jurisdiction through writs of mandamus over all pension boards in the state.

It is therefore ordered that our former decree herein be vacated, and the judgment of the district court be annulled, avoided, and reversed; and it is now ordered, adjudged, and decreed that this suit be dismissed, at the cost of the relatrix in both courts.

See dissenting opinion of NICHOLLS, J., 42 South. 511.