STATE OF NEBRASKA V. BANK OF COMMERCE OF GRAND ISLAND, MODERN WOODMEN OF AMERICA ET AL., APPELLEES, AND HENRY W. MERRIAM ET AL., APPELLANTS.

FILED DECEMBER 5, 1900. No. 10,701.

1. **Petition: DEMURRER.** A petition which, in apt language, charges that the defendant is indebted to the plaintiff in a sum named is not demurrable because it also states that the ownership of the claim is disputed and in litigation between the plaintiff and another party.

2. **Election of Remedies.** Before a case can arise for the application of the principle of election of remedies there must be (1) two co-existing remedies; and (2) those remedies must be so inconsistent that a party can not logically choose one without renouncing the other.

3. ———. If the law gives but one remedy to a party, he is not precluded from resorting to that because he has attempted to avail himself of another to which he was not entitled.

4. **Insolvent Bank: CREDITOR: FILING CLAIM WITH RECEIVER: LIMITATION.** A court may, in its discretion, permit a creditor to share in the assets of an insolvent bank, although his claim was not filed with the receiver within the time which was by a general order limited for the presentation of claims.

5. **Limitation: OTHER CREDITOR: ACTUAL NOTICE.** The failure of a creditor to file a claim within the time fixed by the order of the court does not warrant another creditor who knows of such claim to act on the assumption that it will not be presented.

6. ———: ———: BELATED CLAIM. A creditor who has not been deprived of any legal right by the allowance of a belated claim against an insolvent bank can not complain of the order of the court allowing such claim.

APPEAL from the district court for Hall county. Tried below before THOMPSON, J. *Affirmed.*

*John L. Webster* and *James H. McIntosh*, for appellants.

*Constantine J. Smyth, Attorney General*, for the state.

*W. H. Thompson* and *A. R. Talbot, contra.*

SULLIVAN, J.

This case comes here by appeal from an order of the district court of Hall county recognizing and enforcing

the claim of appellee, a belated creditor, to share with other creditors in the assets of an insolvent bank which is in the hands of a receiver and being wound up in ac-cordance with the provisions of the state banking law. Compiled Statutes, 1899, ch. 8. The Modern Woodmen of America, a fraternal insurance organization incor-porated under the laws of the state of Illinois, had, prior to July 19, 1895, through its head banker, David C. Zink, deposited with the Bank of Commerce of Grand Island the sum of $27,269.33, no part of which has ever been checked out or otherwise withdrawn. In June, 1895, Zink's term of office as head banker expired and his official authority was thereupon extinguished. On Jan-uary 20, 1896, the Bank of Commerce became insolvent and suspended business. The insurance association, the appellee herein, did not present its claim to the receiver within the time limited by the order of the court for the presentation of claims, nor for more than two years thereafter. It knew that the affairs of the bank were being wound up, but refrained from filing a claim be-cause its managing officers were of opinion that the Union National Bank of Omaha, which it had sued, and which it is still pursuing in the federal court, had become liable to it for the amount of the deposit in the Grand Island bank. The claim against the Omaha bank is grounded on a paper transaction between the cashier of that bank and the cashier of the Bank of Commerce. Briefly stated the transaction was this: On January 6, 1896, the Bank of Commerce, being in financial distress and desiring to conceal from the public the fact that it was indebted to the Modern Woodmen of America in a large amount, obtained from the cashier of the Union National Bank the following certificate:

"January 6th, 1896.

"I, Charles E. Ford, cashier of the Union National Bank of Omaha, Nebraska, do hereby certify that at the close of business on the 31st day of December, A. D. 1895, the Modern Woodmen of America had on deposit

in this bank the sum of $27,269.33, designated 'General Fund.'                 CHARLES E. FORD, *Cashier.*"

This certificate was sent to the appellee to enable it, in accordance with its usual custom, to prepare and publish an annual statement showing its assets and liabilities, together with the names of its depositaries. The certificate was false; it was made by Ford for a fraudulent purpose and without authority from his principal. The fund in the Grand Island bank was never transferred to the Omaha bank, and it was not intended that it should be. Neither Ford nor O. J. Smith, the cashier of the Bank of Commerce, intended that the transaction should have any legal efficacy. It was not intended to create any new rights or liabilities, and as between the two banks it is clear, of course, that the effect of the transaction could not go beyond the intentions of those who participated in it. Since the fund in question was never in the hands of the Omaha bank, it is certainly not liable to the appellee upon an implied promise; and it does not appear that it made, or that its cashier attempted to make, any express agreement to pay the money. Neither does it appear that the gratuitous and unauthorized act of Ford in issuing the certificate above set out would preclude the bank from denying liability. In the light of the record before us we do not see how the appellee can succeed in the case pending in the federal court. Surely it can not succeed upon any theory which implies that the Bank of Commerce has been absolved from its obligation to the insurance association. Appellants, who are creditors and stockholders of the insolvent bank, object to the appellee's claim, because its allowance will result in reducing the dividends which they will receive as creditors and increase their liability as stockholders.

Their first contention is that the petition does not state a cause of action. The facts heretofore stated are clearly set forth, but in explanation of the delay in presenting the claim to the receiver it is alleged "that it was a disputed question by and between the Union National Bank

of Omaha, Nebraska, and the said Modern Woodmen of America, as to who was in fact the owner of the said indebtedness; whether or not the said indebtedness was owing from the said Bank of Commerce to the said Modern Woodmen of America, or whether or not the same was owing from the said bank to the said Union National Bank of Omaha, and that said question has been in a state of litigation ever since, and is now." That the ownership of the claim and the liability of the Bank of Commerce to the Modern Woodmen of America were disputed questions does not by any means negative or break the force of the facts pleaded. All the facts stated in the petition are consistent with appellee's right to have its claim adjudged to be a charge upon the assets of the insolvent bank.

The next contention is that appellee having, with full knowledge of the essential facts, elected to proceed against the Union National Bank, it can not now retrace its steps, but is conclusively bound by its election. It may be conceded that if the doctrine of election is here applicable, the appellee has forever lost its remedy against the Grand Island bank by choosing to pursue a different one. But we are of opinion that the doctrine does not apply to this case. "The defense of waiver by election," says Wells, J., in *Connihan v. Thompson*, 111 Mass., 270, 272, "arises where the remedies are inconsistent; as where one action is founded on an affirmance, and the other upon the disaffirmance of a voidable contract, or sale of property. In such cases any decisive act of affirmance or disaffirmance, if done with knowledge of the facts, determines the legal rights of the parties, once for all." Before a case can arise for the application of the principle of election there must be (1) two co-existing remedies; and (2) those remedies must be so inconsistent that a party can not logically choose one without renouncing the other. Apt illustration of the rule is found in some of the cases cited by counsel for appellants in which it is held that one who has sued on the

theory that an unauthorized act done in his name has been ratified can not afterwards maintain an action on the theory that such act and the assumed agency of the person by whom it was performed have been repudiated. *Crook v. First Nat. Bank of Baraboo,* 83 Wis., 31; *Equitable Life Assurance Society v. May,* 82 Ga., 646; *Fowler v. Bowery Savings Bank,* 113 N. Y., 450. In the present case there never was but one remedy of which the appellee could avail itself. Its officers thought otherwise; and perhaps they think so still, but that does not change the fact, nor alter in any way the rights of these litigants. One is not precluded from resorting to a remedy which the law gives him because he has attempted to avail himself of one to which he was not entitled. It is not enough that he supposes he has two remedies and that he acts upon that supposition; he must have them in fact. 7 Ency. Pl. & Pr., 364. In *Bunch v. Grave,* 111 Ind., 351, 352, it is said: "A party who imagines he has two or more remedies, or who misconceives his rights, is not to be deprived of all remedy, because he first tries a wrong one." In *Snow v. Alley,* 156 Mass., 193, 195, Holmes, J., speaking of the doctrine of election, uses this language: "Election exists when a party has two alternative and inconsistent rights, and it is determined by a manifestation of choice," citing *Metcalf v. Williams,* 144 Mass., 452. "But the fact," he goes on to say, "that a party wrongly supposes that he has two such rights, and attempts to choose the one to which he is not entitled, is not enough to prevent his exercising the other, if he is entitled to that. There would be no sense or principle in such a rule." In *In re Van Norman (Bennett v. Lapp),* 41 Minn., 494, 496, Mitchell, J., delivering the opinion, said: "The rule is as undoubted as it is familiar that, where a party has inconsistent rights or remedies, he may claim or resort to one or the other, at his election, and that when once made his election is irrevocable. But we think it is equally true that a mere attempt to pursue a remedy or claim a right to which a party

is not entitled, and without obtaining any legal satisfaction therefrom, will not deprive him of the benefit of that which he had originally a right to resort to or claim." In *Agar v. Winslow*, 123 Cal., 587, 590, Commissioner Gray, after saying that where there exists an election between inconsistent remedies a party is confined to the remedy which he first prefers or adopts, continues as follows: "Before one can exercise an option or preference between two things, both those things must have an actual existence. The defendant, therefore, can not defend in this action of unlawful detainer on the theory that plaintiff, in beginning the suit in ejectment, exercised his right of election between two remedies, unless he makes it appear that both these remedies were open to plaintiff." We have quoted thus extensively from the decisions of other courts, not because we have at any time regarded the question under consideration as a debatable one, but because the learned counsel for appellants have given it much attention in their brief, and are evidently persuaded that it should be resolved in their favor.

A further argument for a reversal of the order of allowance is that the appellee is barred by the doctrine of estoppel from asserting its claim. The following definition of an estoppel *in pais* was approved by this court in *Burke v. Utah Nat. Bank*, 47 Nebr., 247, 253: "To establish an estoppel *in pais* it must be shown: first, that the person sought to be estopped has made an admission or done an act with the intention of influencing the conduct of another, or that he had reason to believe would influence his conduct, inconsistent with the evidence he proposes to give, or the title he proposed to set up; second, that the other party has acted upon or has been influenced by such act; third, that the party will be prejudiced by allowing the truth of the admission to be proved." How have appellants brought their case within the doctrine thus stated? They knew that appellee had a claim against the Bank of Commerce; they knew that

such claim might be yet presented to the receiver and that the court might, in its discretion, allow it. Their expectation with respect to appellee's future conduct has, doubtless, been disappointed, but they have not been deceived. They should not have permitted the conclusion to impose itself upon them that the right to file a claim had been abandoned because it had not been promptly asserted. Besides it does not appear that they have been prejudiced in any way by the action taken under the belief that appellee had waived its claim. They say that they made a second payment on their stockholders' liability, but they do not show that they have paid more than the amount legally due, or that they could have successfully defended an action brought against them by the receiver. Neither does it appear that appellee had the slightest reason to suppose that appellants' conduct as stockholders would be influenced by its failure to seasonably claim its share of the bank assets. No estoppel has been proven.

The order appealed from is

AFFIRMED.