# Linaka, Appellant, *v.* Firemen's Pension Fund of Philadelphia.

Argued January 26, 1943. Before MAXEY, C. J.; DREW, LINN, PATTERSON, PARKER and STEARNE, JJ.

*John F. E. Hippel,* with him *George B. Clothier* and *Edmonds, Obermayer & Rebmann,* for appellant.

*James Francis Ryan,* for appellee.

OPINION BY MR. CHIEF JUSTICE MAXEY, March 22, 1943:

This is an appeal from the judgment of the Superior Court reversing the judgment of the Court of Common Pleas No. 5 of Philadelphia. Ellen Linaka, plaintiff below, is the widow of John Linaka, Jr., who as a city fireman in Philadelphia was killed on October 30, 1938, while in the discharge of his duty. At that time he was a member in good standing of the Firemen's Pension Fund of Philadelphia. On November 4, 1938, his widow applied to this corporation for a widow's pension, under Art. 2, sec. 5 of the by-laws which provided, inter alia, that "the widow . . . of a member who was killed while in the discharge of his duty . . . shall be entitled to apply for a pension." The application was duly referred to a committee for investigation and report.

On the evening of that day the annual meeting of the Pension Fund was held and among the changes then made in the by-laws was a provision in Art. 12, sec. 5, by which change the amount of "any pension allowed to a widow" was increased from $20.00 to $50.00 per month. Section 2 of the same article was amended by adding a provision that "the pension granted to a widow . . . shall begin on the date of the death of a member." Theretofore there had been no provision in the by-laws as to when pensions granted to a widow were to begin. The "gap" between the date of a member's death and the first payment of a pension had been bridged by "donations".

On January 3, 1939, the committee recommended to the Board of Control that plaintiff be granted a pension of $20.00 a month, beginning February 1, 1939. The Board approved this and also made the widow a dona-

tion of $60.00, equivalent to $20.00 a month from November 1, 1938, to February 1, 1939, when the payment of the pensions would begin. The claimant-widow declined to accept this award and brought suit for eight months' pension from November 1, 1938, to June 1, 1939, at the rate of $50.00 a month, and for interest thereon. The trial judge directed a verdict for the plaintiff. An appeal was taken to the Superior Court. The only issue raised was as to the amount of the monthly pension to which claimant was lawfully entitled.

The Court of Common Pleas took the position that after plaintiff's husband was killed the by-laws of the association gave her no right except "the right to make application" for a pension and that the "right to a pension did not vest until the Board had acted." The court then reasoned that since the application for a pension was still pending when the amount of the pension to be paid to dependents of deceased member was raised to $50.00 a month, the Board "should have followed the existing by-law, which fixed the penison at $50.00."

The Superior Court, in an opinion by Judge STADT-FELD, after stating that "the by-laws constitute the contract of association of its members: *Leatherman et al. v. Wolf et al.*, 240 Pa. 557, 88 A. 17" held that the rights of the widow-claimant "were conditioned upon the death of the member under certain circumstances and became fixed upon the happening of that event. It was that particular event which provided the basis for and gave rise to any claim against the association. Hence, it is with reference to the time of the death of the member that the rights of the dependent relatives are to be determined." The cases of *St. Patrick's Male Beneficial Society v. McVey*, 92 Pa. 510, and *Chambers v. Knights of Maccabees*, 200 Pa. 244, 49 A. 784, hold that a member himself of an incorporated beneficial society can claim only such benefits as are prescribed by the by-laws existing at the time the right to relief arises.

In cases like the one before us it must be assumed that the payments made by a society such as the de-

fendant society are not mere gratuities which can be granted or withheld arbitrarily. They are benefits which are paid for by contributions of the members and otherwise. There must be a definite date when the right to the pension provided for arises. The logical date is the date when the thing happens which makes a benefit payment or a pension necessary. In the case of sick benefits, that date is when the sick member becomes incapacitated by his sickness. Of course, the Society's by-laws can fix a different date, such as, for example, one week after the disability arises, but if there is any ambiguity about the provision fixing the date for the arising of the right to the benefit provided for, it is a reasonable inference that the date intended is the date referred to above as the "logical date."

In the instant case the language quoted about claimants being "entitled to apply for a pension" lends some support, when viewed superficially, to the view that the only right this widow had after her husband's death was to *apply* for a pension and that when the application was favorably acted upon the pension she then had a right to get, was the pension of $50.00 a month as provided in the by-laws *then existing.* We do not so interpret the language of these by-laws. When claimant's husband was killed "in the discharge of his duty", her right to the pension thus provided for in the by-laws became a vested right. Before she could *obtain* that pension she had to apply for it and to establish facts which brought her claim within the prescriptions of the by-laws. The quoted phrase "entitled to apply for a pension" simply meant that if the widow wished to receive the pension provided for in such cases, the duty of acting was upon her. The "door" to a pension was opened by her husband's death but she had to enter that door and prove certain facts before the pension would be put in her grasp. She acted and when the facts were established to the Board's satisfaction, a pension was payable to her. The amount of that pension was the amount fixed

by the by-laws when the event occurred which gave rise to her claim, to wit, her husband's death while discharging his duty. No action taken by the defendant corporation subsequent to her husband's death could abridge her rights to payments out of the funds of that corporation; and on the other hand, any increase in death benefits made by the corporation's by-laws, after her husband's death, did not enlarge in the slightest degree her legal claim to payments out of that fund. The increase provided for in the by-laws operated prospectively not retrospectively. Her rights and their value are measured by the by-laws in force when her cause of action arose and that was on October 30, 1938.

The judgment of the Superior Court is affirmed.