IN RE APPLICATION OF SCHAUB.
HARRY SCHAUB, APPELLEE, v. CITY OF SCOTTSBLUFF,
APPELLANT.
83 N. W. 2d 775

Filed June 14, 1957.  No. 34153.

*Loren G. Olsson,* for appellant.

*Wright, Simmons & Harris,* for appellee.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

The subject of this litigation is a claim of appellee for benefits provided by the Firemen's Pension Act from the city of Scottsbluff. It is a city of the first class without a home rule charter. It has a paid fire department but does not have a board of fire and police commissioners. Appellee submitted to the city council of appellant a written statement which he asked should be considered as a petition. It contains the following:

Appellee was, on September 11, 1953, a fireman on the paid fire department of the appellant and has continued in that capacity since that date. He received an injury on that date while in the performance of his duties as a fireman. The injury did not result in total temporary disability of appellee until April 4, 1954, when surgery was performed because of it. Appellee was totally temporarily disabled from that date until August 19, 1954. Thereafter he was partially disabled but returned to his duties as a fireman and continued to perform them until November 15, 1954, on which date he again became totally temporarily disabled as a result of the accident in which he was injured. Appellee had a partial disability since the date of the accident and his disability has become permanent. Appellee, by his petition, asked the city council of appellant to conduct a hearing and to ascertain that such partial disability has become permanent and that he was entitled to benefits of the Firemen's Pension Act applicable to appellant.

The city council held a hearing as appellee requested and it concluded that he was not entitled to a pension because he was not suffering from any disability that did not permit him to perform the duties of a fireman of the city of Scottsbluff, Nebraska. The city council did not ascertain that any partial disability suffered by appellee had become permanent.

Appellee contested the action of the city council by petition in error in the district court. It alleged in sub-

stance the matters above recited and asserted error in the proceedings of the city council because it failed to find that appellee was entitled to a pension as provided in the Firemen's Pension Act applicable to appellant, it failed to take action necessary to assure appellee such a pension, and it found that appellee was not suffering from any disability that did not permit him to perform the duties of a fireman of appellant. A transcript of the proceedings before the city council was made part of the petition in error.

The district court found that appellee was entitled to a pension as provided in section 35-203, R. R. S. 1943, that he became disabled from the accident, that such disability became permanent within 12 months of the date, and that there was error in the proceedings of the city council. The finding and order of the city council were reversed and it was ordered to provide appellee with a pension of at least one-half of the salary received by him and other benefits provided by the Firemen's Pension Act applicable to appellant commencing with July 1, 1955. This appeal is from that adjudication.

Appellee became a member of the fire department of appellant on June 20, 1949. He was serving in that capacity September 11, 1953, when he was injured while assisting in fighting a fire in the performance of his duties as a fireman. He was at that time the driver of a truck of the department. He drove it to the location of the fire and was in the act of engaging a gear so that the pump on the truck would operate. Appellee had his left hand on the handle or lever provided to engage the gear when it was forcibly kicked back and the wrist of appellee was injured. His left wrist immediately felt like it was sprained. It was swollen and painful for about a month before appellee sought medical aid. During that time he carried on his duties as a fireman. Thereafter for about 2 months the wrist was in a cast. Improvement of the member was not obtained and appellee consulted another practitioner

who examined appellee and concluded that he had a torn capsule of the left wrist joint. The doctor referred appellee to an orthopedic surgeon of Casper, Wyoming, who operated on appellee April 7, 1954, for the purpose of fusing or stabilizing the wrist. Appellee returned to his work as a fireman August 19, 1954, and continued to work until November 15, 1954. During this period his wrist caused him agonizing pain but he performed his assignments as best he could. He consulted a doctor in Cheyenne, Wyoming, who had been recommended to him. The first attempt to fuse or stabilize the wrist was not accomplished and a second operation was performed in Cheyenne on November 15, 1954, as a further effort to stabilize the wrist. There was surgery on the wrist a third time in April 1955 for the removal of a piece of bone from it. Appellee was under treatment with the Cheyenne, Wyoming, doctor from November 15, 1954, to the time of the hearing before the city council July 12, 1955.

The petition of appellee to the city council alleged that he was then, June 13, 1955, a fireman of the paid fire department of appellant. He testified at the hearing July 12, 1955, that he was then a member of that fire department. He said in his petition in error that he was a fireman of appellant. It was verified by appellee August 10, 1955. Appellant did not challenge these assertions of appellee by any proof. They must be accepted as true in this litigation. Barkalow Bros. Co. v. English, 159 Neb. 407, 67 N. W. 2d 336. Appellee has not attempted to do any work since November 15, 1954. He said the doctor advised him not to engage in any effort which would involve lifting or working with his left wrist. He has no disabling defect or condition other than his left wrist. Appellee was paid his regular salary from the time he was injured September 11, 1953, for 12 months. In fact, the record shows that he was paid salary to July 1, 1955, which was 11 days prior to the hearing before the city council.

The accident in which appellee was injured, and from which any disability he suffers resulted, happened September 11, 1953. The request made to the city council in reference to his injury and disability was his petition to it of June 13, 1955. This was more than 21 months after the accident involved in this cause. The relevant parts of section 35-203, R. R. S. 1943, the statute applicable to cities of the first class that do not have a home rule charter, are: "In case any fireman in a paid fire department in any city of the first class * * * shall become permanently and totally disabled from accident or other cause, while in, the line of his duty, such fireman shall forthwith be placed upon the roll of pensioned firemen, at the rate provided for retired firemen in section 35-201; * * * in case of partial disability of a fireman received while in the line of duty, he shall receive his salary during the continuance of such disability for a period not to exceed twelve months; and provided further, if it shall be ascertained by the board of fire and police commissioners or other proper municipal authorities within twelve months that such disability has become permanent, then his salary shall cease and he shall be entitled to the benefits of the provisions with reference to pensions referred to in sections 35-201 to 35-205." The rate provided for retired firemen in section 35-201, R. R. S. 1943, referred to in the above quotation is expressed by this language: "Such pension shall be at least fifty per cent of the amount of salary such retiring fireman is receiving at the time he goes upon such pension list; Provided, in no case shall the amount of such pension be less than fifty dollars per month."

The right of a fireman to any of the benefits specified is statutory and the Legislature had authority to attach any condition to the existence of the right it desired. In the instance of the right claimed in this cause the condition of it is that the proper municipal authorities ascertain within 12 months of the accident

that the disability resulting therefrom has become permanent. This requirement as a condition of the right implies an obligation of the city council, if there is no board of fire and police commissioners in the municipality concerned, upon demand of the fireman claiming the benefits of the statute, to hold a hearing, take evidence, and ascertain and declare whether or not the disability of the fireman has become permanent. The proper municipal authorities may of their own volition perform this function but the statute does not require this of them.

In State ex rel. Gaddis v. Bryan, 102 Neb. 506, 167 N. W. 783, the court said concerning section 2518, Rev. St. 1913, which is now section 35-203, R. R. S. 1943: "The section of the statute under which this action is brought contemplates a hearing, the presentation of proof, and a decision based thereon by a board of city officials as a condition precedent to right of pension."

In Cox v. Dunn, 243 Ala. 176, 9 So. 2d 1, it is said: "The right to a pension is purely statutory and does not arise until an application and proof is made as the statute requires."

In 70 C. J. S., Pensions, § 7, p. 430, it is declared: "The legislature may establish the procedure under which pensions are to be granted, and the right to a pension does not arise except where the procedure prescribed by statute is followed."

The court stated in Linaka v. Firemen's Pension Fund, 346 Pa. 459, 31 A. 2d 122: "When claimant's husband was killed 'in the discharge of his duty', her right to the pension thus provided for in the by-laws became a vested right. Before she could obtain that pension she had to apply for it and to establish facts which brought her claim within the prescriptions of the by-laws. The quoted phrase 'entitled to apply for a pension' simply meant that if the widow wished to receive the pension provided for in such cases, the duty of acting was upon her. The 'door' to a pension

was opened by her husband's death but she had to enter that door and prove certain facts before the pension would be put in her grasp."

The following appears in Badger v. Homan, 45 Cal. App. 2d 235, 113 P. 2d 925: "The respondent further argues that section 5 of the ordinance is self-executing, that nothing was required of him in the way of procedure, and that when he became disabled it was the duty of the pension board to order him placed upon the pension list. * * * Section 5, while it permits retirement on pension for disability caused by service injury, provides that it shall be allowed only when the injury is such as to render necessary such retirement from active service, and that the pension board shall then order the pension paid to 'such person retired thereafter'. This indicates that the suffering of the injury is not to automatically retire the person and that some hearing or determination is to be had. The precise amount of injury which would necessitate a retirement from active service is not fixed and from the very language used a question of fact is necessarily left for the decision of some fact-finding body. * * * The sections just referred to show that section 5 is not self-executing. In any event, a hearing and action by the pension board is required and certain minimum requirements must be complied with before the pension board has authority to order the retirement on pension of a member of the department."

The Missouri court said in State ex rel. Lambert v. Flynn, 348 Mo. 525, 154 S. W. 2d 52: "If the members of either the board of trustees, the board of police commissioners or the medical board had wrongfully refused to perform a statutory duty, the claimant would have a remedy. But the police retirement pension system is entirely statutory, and the statutes provide an administrative tribunal and certain prerequisites to action by it. The courts are not authorized to intrude * * * unless and until the statutory conditions have been

complied with and administrative remedies have been exhausted."

Broadhurst v. City of Fall River, 278 Mass. 167, 179 N. E. 586, expresses the following: "The question presented for decision is whether a pension granted by the mayor under St. 1924, c. 278, is a binding obligation upon the defendant unless and until approved by the Fall River board of finance * * *. Said c. 278 relates to the pensioning of laborers in the city of Fall River. * * * It provides in § 1 that a laborer in the employ of that city in the position of the plaintiff 'may, at his request and with the approval of the mayor, be retired from service, and if so retired he shall receive from said city for the remainder of his life an annual pension' of a stated amount. If that statute alone be considered, the plaintiff is entitled to receive payments on the pension. * * * But in this connection the scope and effect of St. 1931, c. 44, must be considered. * * * The design of that chapter, as disclosed by all its provisions, is to create a board of finance * * * and to vest in that board complete control over all the financial affairs of that city. * * * It follows that, as matter of statutory construction, the granting of the pension to the plaintiff by the mayor, without approval by the board of finance, imposed no liability upon the defendant."

State ex rel. Lynch v. Board of Trustees of Fireman's Pension & Relief Fund, 117 La. 1071, 42 So. 506, contains these expressions: "It will be seen that the law itself has fixed the class of persons to whom the pension shall be paid and does not leave the determination of that question to the board. * * * So far as that is concerned, the law itself controls the situation. The law has, however, left to the board the decision whether as a matter of fact the person applying for a pension has brought herself into and under the class provided for under the terms and conditions fixed in the statute."

The author says in 3 McQuillin, Municipal Corporations (3d Ed.), § 12.161, p. 554: "The procedure for the

granting of pensions is generally prescribed by statute or other appropriate law, which should be complied with in order to warrant the granting of a pension."

The statute granting the right claimed by appellee prescribed ascertainment, within a limited period by proper authorities of the municipality, of a fact as a condition precedent to the right. § 35-203, R. R. S. 1943; State ex rel. Gaddis v. Bryan, *supra*. Appellee made no attempt to secure such ascertainment of the designated fact within the time limited. He had no right to the benefit he sought when he initiated the proceeding eventuating in this appeal. If he had made his petition to the city council within 12 months of the accident and if the city had refused or failed to act thereon until after the expiration of the period limited by the statute, appellee could not have been prejudiced by such delay. He also in that event could have compelled action on his petition by the city. Appellee could not, however, extend the time within which he was required to make request to or demand upon the city for action by postponing the time of his demand or request. Dillon v. Board of Pension Commissioners, 18 Cal. 2d 427, 116 P. 2d 37, 136 A. L. R. 800; State ex rel. Lambert v. Flynn, *supra*.

The original Firemen's Pension Act of Nebraska provided that a fireman of a paid fire department of a metropolitan city or city of the first class who became permanently and totally disabled from any cause while in the line of duty should be placed upon the roll of pensioned firemen at 25 percent of his then salary. It provided no compensation for any disability less than total and permanent. Laws 1895, c. 39, § 3, p. 169.

The amendment of 1909 provided that the firemen of a paid fire department of a metropolitan city or a city of the first class who became permanently and totally disabled from any cause while in the line of duty should be placed upon the roll of pensioned firemen at the rate of 50 percent of the then salary of the

fireman but in no case less than $50 per month; that in case of partial disability of a fireman received while in the line of duty, he should receive his salary during the continuance of such disability for a period not to exceed 12 months; and that if it was ascertained by proper municipal authorities within 12 months that such disability had become permanent, then his salary should cease and he should be entitled to "the benefits of the provisions with reference to pensions referred to in this act." Laws 1909, c. 60, § 3, p. 291.

The act of 1923 on this subject, Laws 1923, c. 151, p. 367, was adjudged invalid by this court. Axberg v. City of Lincoln, 141 Neb. 55, 2 N. W. 2d 613, 141 A. L. R. 894.

The act of 1943 provided the identical benefits for a fireman of a paid fire department in a metropolitan city or a city of the first class which did not have a home rule charter who became permanently and totally disabled or who suffered partial disability as were provided in the act of 1909 as detailed above. Laws 1943, c. 92, p. 313.

The act of 1943 also contained provisions affecting any city of the first class having a home rule charter. One of these was that such a city was authorized to establish by its charter pensions for the members of its fire department provided a minimum requirement in favor of such fire department should consist of provisions identical with all of those contained in section 5 of the act (now sections 35-205 to 35-214, R. R. S. 1943) except that at the option of any such city more liberal provisions for such firemen might be made. It also provided that any fireman who was permanently and totally disabled from any cause while in the line of duty should be placed on the roll of pensioned firemen and should be paid 50 percent of the salary of the fireman but in no case less than $50 per month. The foregoing was followed by this provision: "In case of temporary total disability of a fireman received while in line of duty,

he shall receive his salary during the continuance of such disability for a period not to exceed twelve months: Provided, if it shall be ascertained by the city council or other proper municipal authorities within twelve months that such disability has become permanent, then his salary shall cease and he shall be entitled to the benefits of the foregoing provisions with reference to pensions in case of total and permanent disability." Laws 1943, c. 92, § 5(6), p. 317. The provisions last referred to are now contained in sections 35-204 and 35-211, R. R. S. 1943.

The interpretation of the language "partial disability" which has been contained in the Firemen's Pension Act applicable to any city of the first class that did not have a home rule charter since 1909 presents a problem of importance and some difficulty. There is no specific language in any of the acts mentioned above which attempts to define the terms used in this respect. The original legislation provided compensation for permanent total disability of a fireman which resulted from some cause while he was performing his duties as fireman. Disability of that degree has been a primary concern of all subsequent legislation on this subject. If the words of section 35-203, R. R. S. 1943, "in case of partial disability" are to be interpreted literally, then any disability suffered by a fireman because of something that occurred while he was in the line of duty, without regard to the degree of disability, entitles him to his then salary while his disability continues, not to exceed 12 months; and if it is ascertained, as the statute permits, that such a disability has become permanent, without regard to its degree, then he is entitled, according to the literal terms of the legislation, to the same amount of benefits as if he had been totally and permanently disabled at the precise time he became victim of the accident or other cause that affected him. It cannot reasonably be said the Legislature intended that a fireman who suffered only a small degree of permanent disability

should have the same benefits and recovery as a fireman who from some cause is immediately rendered totally and permanently disabled. It is not probable that the Legislature intended that a city of the first class without a home rule charter should be compelled to compensate a fireman for any degree of disability he suffered less than total and permanent disability but that the minimum disability of a fireman for which a home rule city of the first class should be liable was temporary total disability.

The legislation of 1923 on this subject attempted to classify cities of the first class which were not home rule cities as one class and cities of the first class which were home rule cities as another class. It was in 1942 adjudged invalid on the basis that it did not operate in the same manner on all members of the class, that is, on all cities of the first class of the state. Axberg v. City of Lincoln, *supra*. The Legislature the following year attempted to put all cities of the first class of the state on the same basis as to at least minimum benefits for disabled paid firemen. A part of this effort is represented in the legislation it adopted applicable to cities of the first class having a home rule charter which provides: "In case of temporary total disability of a fireman * * * he shall receive his salary during the continuance of such disability for a period not to exceed twelve months: Provided, if it shall be ascertained by the city council * * * within twelve months that such disability has become permanent, then his salary shall cease and he shall be entitled to the benefits of the foregoing provisions with reference to pensions in case of total and permanent disability." Laws 1943, c. 92, § 5(6), p. 317; § 35-211, R. R. S. 1943. The Legislature, of course, knew that the language in another part of the same legislation applicable to cities of the first class that were not home rule cities was: "in case of partial disability of a fireman." Laws 1943, c. 92, § 3, p. 314; § 35-203, R. R. S. 1943. These considerations are con-

vincing that the Legislature understood and intended the language "in case of partial disability of a fireman," § 35-203, R. R. S. 1943, to describe and mean precisely the same condition expressed by the words "in case of temporary total disability of a fireman." § 35-211, R. R. S. 1943. The interpretation and meaning of the words in the former section "partial disability" are that they were intended to and do mean temporary total disability.

Appellee did not suffer temporary total disability because of and at the time of the accident on September 11, 1953. He continued to perform his regular duties as a fireman until April 4, 1954. During the period commencing with that date and continuing through August 18, 1954, he did no work as a fireman because of the first operation performed on his wrist. He returned to his work as a fireman August 19, 1954, and performed all the duties assigned to him or requirements made of him in that capacity through November 14, 1954. He was disappointed when he returned to work as a fireman on August 19, 1954, that another fireman had been assigned to drive the truck appellee had previously operated for the fire department of the city. Appellee testified that he could have driven the truck all right at that time. He thought that he should have been reinstated as driver of the fire truck he had previously operated. There was a second operation on the wrist November 15, 1954. Appellee did not do or offer to do any work as a fireman for the city during the period from November 15, 1954, to the date of the hearing before the city council July 12, 1955. He was paid his salary as fireman through the month of June 1955. During the hearing appellee said he was a member of the fire department of appellant. The record is silent of any attempt of the city to dispense with the services of appellee as a fireman of the city. The city council found he was able to perform his duties as a fireman.

Appellee, before and at the time of the hearing, oper-

ated his automobile when he was alone wherever he desired to go within or without the city of Scottsbluff. He testified that he was then able to operate a fire truck and the pumps on the truck without difficulty at a fire. He said he could handle the hydrants at a fire and that there was always one fireman assigned to that operation during a fire. He testified he could perform the duties of a fireman except he could not handle the hoses, set up or erect the ladders, or ride the tailboard of a truck. The left wrist of appellee was injured. It had been by surgery stabilized. He has lost movement of the wrist joint and the left arm has been slightly shortened. He is otherwise, so far as the record indicates, sound of body. He has the use of it and all of its members except as the use of the left wrist is limited. Its use, however, is still considerable. The record does not contain any estimate of any degree of disability of appellee. Evans v. City of Lincoln, 147 Neb. 163, 22 N. W. 2d 565, speaks of what constitutes permanent total disability as contemplated by the Firemen's Pension Act: "A fireman is permanently and totally disabled under the Firemen's Pension Act when the disability from which he suffers renders him permanently unable to obtain, hold, or do any substantial amount of remunerative work, either in his previous occupation or in any other established and recognized field of employment for which he is fitted. * * * Total disability contemplates the loss of earning power and in measuring such loss consideration will be given to the ability to earn wages, eligibility to procure employment generally, ability to hold a job obtained, and the capacity to perform the tasks of the work in which a person is engaged." The record does not justify a conclusion that appellee is totally and permanently disabled.

The legislative plan is that temporary total disability of a fireman that is not ascertained to have become permanent within 12 months after the accident shall be wholly compensated by payment by the city to him of

his salary during the continuance of the disability not to exceed 12 months. If the temporary total disability is ascertained within 12 months to have become permanent, then the fireman is entitled at the end of 12 months after the accident to be placed upon the roll of pensioned firemen of the city and to receive and enjoy the benefits provided for totally and permanently disabled firemen. §§ 35-203 and 35-211, R. R. S. 1943.

The judgment should be and it is reversed and the cause is remanded with directions to the district court for Scotts Bluff County to dismiss the petition in error.

REVERSED AND REMANDED WITH DIRECTIONS.

WHITE, District Judge, participating on briefs.