STATE OF NEBRASKA EX REL. HARRY SCHAUB, APPELLANT, V.
CITY OF SCOTTSBLUFF, A MUNICIPAL CORPORATION,
APPELLEE.
100 N. W. 2d 202

Filed January 8, 1960.  No. 34619.

*Wright, Simmons & Harris,* for appellant.

*Loren G. Olsson,* for appellee.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

This is an action for a writ of mandamus to compel the city of Scottsbluff to restore Harry Schaub to his employment as a member of the fire department as of July 1, 1955, and to pay his salary as such from said date. The trial court denied the writ and relator appeals.

It is not disputed that the city at all times herein mentioned was a city of the first class with a population of less than 40,000, which had not adopted a home rule charter, and that it maintained a fire department with paid members. Schaub became a member of the fire department on June 20, 1949, and thereupon became entitled to the rights of a fireman under the Civil Service Act for firemen.

On September 11, 1953, Schaub was injured in the course of his employment with the city. He continued on duty until April 4, 1954, and was thereafter off duty until August 19, 1954, due to a surgical operation. From August 19, 1954, to November 15, 1954, he worked as a fireman. After November 15, 1954, Schaub did not again actually work as a fireman. On June 13, 1955, Schaub made application to the city for a pension under section 35-203, R. R. S. 1943, contending that he was totally and permanently disabled as a fireman. The

city denied the application for a pension. Schaub was granted the relief he sought by the district court for Scotts Bluff County. On appeal to this court the judgment of the district court was reversed, the effect of the reversal being that Schaub was found not to be totally and permanently disabled and, consequently, not entitled to a fireman's pension. Schaub v. City of Scottsbluff, 164 Neb. 805, 83 N. W. 2d 775.

On November 5, 1957, a date subsequent to the final judgment of this court in Schaub v. City of Scottsbluff, *supra*, Schaub applied in writing to the city for reinstatement as an active fireman. The application was denied on November 14, 1957, on the ground that Schaub had abandoned his employment as a fireman and was precluded from claiming any rights under the Civil Service Act. On January 10, 1958, this action was commenced to compel the city to reinstate Schaub as a fireman as of July 1, 1955, and to pay him his salary since that date. As heretofore stated, the trial court denied the writ, and this appeal followed.

It is stipulated by the parties that the city at no time filed charges against Schaub, or in any manner purported to discharge him from his employment. It is stipulated also that the city continues to withhold 3 percent of Schaub's pay, as permitted by section 35-212, R. R. S. 1943, and that Schaub has not demanded its return to him in accordance with said section of the statute. It is further stipulated that Schaub was paid his full salary for 12 months while disabled, as required by section 35-203, R. R. S. 1943. It is likewise stipulated that the city has retained the sums of $548 and $418.95 paid to Schaub by the city's compensation insurance carrier, pursuant to section 35-213, R. R. S. 1943, and that Schaub has made no demand for the return of the same. At no time subsequent to November 15, 1954, did Schaub report for duty as a fireman, nor did he obtain or seek to obtain a leave of absence from his employment, until on or after June 25, 1957. It is

stipulated that Schaub made no request to return to duty as a fireman from June 12, 1955, to about June 25, 1957.

The evidence shows that during this period Schaub registered as an applicant for employment with the Nebraska State Employment Service in Scottsbluff and made subsequent inquiries at that office concerning employment opportunities for himself. In April 1956, he made application to the city for a position as a parking meter patrolman in the police department, which application was denied. From October 9, 1956, to December 15, 1956, he was employed by the Great Western Sugar Company as an oiler. In March 1957, he was employed by the Scottsbluff School District for a period of 10 days. The evidence shows that he drove his automobile continuously from July 1955 to June 1957, including a trip to and from Cheyenne, Wyoming. The evidence clearly shows that Schaub was not totally disabled from performing the duties of a fireman during this period and that he considered himself as not in the employ of the city.

It is the contention of Schaub that he was at all times a fireman up to and including June 25, 1957, the date he first requested permission to return to duty under the provisions of the Civil Service Act, section 19-1808, R. R. S. 1943, thereof. The foregoing section of the statute states in part: "No person in the classified civil service, who shall have been permanently appointed or inducted into civil service under the provisions of this act, shall be removed, suspended, demoted or discharged except for cause and then only upon the written accusation of the appointing power or any citizen or taxpayer." We point out at this time that the city consistently contended that Schaub was not permanently and totally disabled and at no time terminated or purported to terminate the employment of Schaub as a fireman. It is the contention of the city that Schaub voluntarily abandoned his employment as a

fireman and, consequently, section 19-1808, R. R. S. 1943, has no application. We concur with this view. One under the Civil Service Act may resign his position or abandon it and thereby lose all benefits provided by the act. The Civil Service Act was enacted for the purpose of creating and protecting the rights of employees, and affords no benefits to employees who resign or abandon the employment. Abandonment of the duties of a position is generally regarded as a form of resignation, having all the consequences of a voluntary resignation. The rule is: A position is held upon the implied condition that the employee will diligently and faithfully perform the duties assigned to him. Where it appears that the employee refuses or neglects to perform the duties of his position for so long a period of time and under such circumstances as to reasonably warrant the presumption that he does not desire or intend to perform the duties of his position he will be held to have abandoned it, not only where his refusal to perform was willful but also where, though not intending to vacate the position, he in good faith but mistakenly supposed he had no right to it. While an abandonment of a position by an employee must be total and under such circumstances as to clearly indicate its absolute relinquishment, whether or not a position has been abandoned is dependent on his acts and conduct rather than his declared intention. The law will infer an abandonment where the acts and conduct of the employee indicate that he has completely relinquished the duties of his position. See Mechem on Public Officers, § 435, p. 278.

We think the evidence in this case shows an abandonment by Schaub of his position as a fireman for the city under the foregoing rule. Schaub contends, however, that he was enforcing a claimed legal right to a pension because of permanent total disability during the period of his absence, and that his attempted assertion of that right in the court under the Firemen's

Pension Act (section 35-203, R. R. S. 1943) does not impair or defeat his rights under the Civil Service Act. In this respect we point out that the Civil Service Act is for the protection and benefit of employees of the city who come within its terms while the Firemen's Pension Act is for the benefit of former employees of the fire department who have been separated from their employment for any of the reasons set forth in the act. In other words, the Civil Service Act contemplates the existence of the employer-employee relationship while the Firemen's Pension Act contemplates the severance of that relationship. It is clear, therefore, that one entitled to a pension has no rights remaining under the Civil Service Act, and one having rights under the Civil Service Act has no right to a pension.

The record here shows that Schaub applied for a pension, which the city refused to grant. Schaub was then faced with the alternative of accepting the judgment of the city and continuing the performance of his duties as a fireman, or of continuing the litigation to obtain a pension, the latter course implying a severance of his employment as a fireman. He elected to assert in the courts his claimed right to a pension, a claim which was finally determined against him by the final judgment of this court in October 1957. He now contends, after failing to perform the duties of a fireman for a period of 2 years and without requesting or obtaining a leave of absence from such employment, that he may properly assert rights under the Civil Service Act which include restoration to service and back pay from July 1955. We point out that the election of Schaub to pursue his claimed right to a pension in the courts was based on his status as a former employee who had become permanently and totally disabled in the course of his employment. For 2 years he conducted himself as one who had severed his employment. He failed to perform the duties of his position, he neither requested nor obtained a leave of absence,

and he sought and obtained employment elsewhere. He elected to abandon his position and the rights incidental to that position contained in the Civil Service Act and to insist upon his right to a pension under the Firemen's Pension Act. By the present action he alleges a completely new factual situation wholly contrary to his position in the previous litigation.

We think the case is controlled by our decision in Turner v. Grimes, 75 Neb. 412, 106 N. W. 465, wherein we said: "To sustain the present action requires a negation of the facts set forth in the petition in the first action, and, having assumed a certain position in this litigation, and having vexed the defendant with a lawsuit based thereupon, he cannot now be permitted to change his position and harass the defendant with another action based upon another and totally different theory. State v. Board of County Commissioners, 60 Neb. 570; 7 Ency. Pl. & Pr. 370; Moss v. Marks, 70 Neb. 701; Thompson v. Howard, 31 Mich. 309; Fowler v. Bowery Savings Bank, 113 N. Y. 450, 10 Am. St. Rep. 479, and note, p. 491. * * * The cases cited by plaintiff lay down the principle that, where the plaintiff was mistaken and undertook to avail himself of a remedy that he was not entitled to, he may afterwards avail himself of the proper remedy. The plaintiff in this case had the right to elect as to whether he would treat the title to the property as having passed, and sue in assumpsit upon the express promise, or he had the right, upon the theory that the title never passed, to sue for the wrong. He did not have the right to do both." Paraphrasing the holding of that opinion, Schaub had the right to continue to perform his duties as a fireman and obtain the benefits provided by the Civil Service Act, or he could abandon his employment as a fireman and obtain any benefits provided by the Firemen's Pension Act. He did not have the right to do both.

The rule under the doctrine of the election of remedies, that one may pursue a second remedy after seek-

ing a first remedy unsuccessfully, applies only when both remedies are sought on a consistent state of facts. The rule has no application where the second remedy is based on a state of facts wholly inconsistent with the factual situation in the previous litigation. Pekin Plow Co. v. Wilson, 66 Neb. 115, 92 N. W. 176; State v. Bank of Commerce, 61 Neb. 22, 84 N. W. 406.

There is a distinction in the law between a mistake of remedies and an election of remedies. A plaintiff is not precluded from resorting to a remedy because he has attempted to avail himself of another to which he was not entitled, even if he has prosecuted such suit to judgment. The doctrine of election of remedies is not a bar to a subsequent action that can be sustained on proof of facts consistent with the proof in the prior action. A litigant may not, however, assert the existence of one state of facts in one action and, being unsuccessful in such action, assert a different state of facts wholly inconsistent with those asserted in the first action. Once a plaintiff has taken a positive position with regard to the subject matter he will not be permitted thereafter to change his position and harass the defendant with another action based on wholly inconsistent facts for a wholly inconsistent remedy.

Schaub relies to some extent on Simpson v. City of Grand Island, 166 Neb. 393, 89 N. W. 2d 117. The case is clearly distinguishable. We held in that case that the city properly abolished the position occupied by Simpson but that it wrongfully discharged him and wrongfully deprived him of the benefits provided by the Civil Service Act. Upon discharge, Simpson properly raised the issue before the city council of the city and prosecuted error proceedings from its adverse decision. The issues thus presented bear no similarity to those presently before us.

We conclude that Schaub abandoned his position as a fireman and elected to pursue the remedy provided by the Firemen's Pension Act. He is precluded under

the doctrine of election of remedies from prosecuting a second action based upon a state of facts completely inconsistent with those asserted in the first suit. The trial court having arrived at the same conclusion, the judgment of the district court is affirmed.

AFFIRMED.