BILLIE K. HOOPER, APPELLEE, v. CITY OF LINCOLN, NEBRASKA, A MUNICIPAL CORPORATION, APPELLANT.
163 N. W. 2d 117

Filed December 6, 1968. No. 36854.

Ralph D. Nelson and Jack B. Lindner, for appellant.

Nelson, Harding, Leonard & Tate and David D. Tews, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, and McCOWN, JJ.

SPENCER, J.

Plaintiff, who was employed by defendant city as a fireman, brought this action for a declaratory judgment to determine pension rights under sections 15-1001 to 15-1007, R. S. Supp., 1963. The trial court found plaintiff became temporarily disabled on October 7, 1965, for work as a fireman because of a heart condition received in the line of duty, and was permanently and totally disabled on January 31, 1966. City perfected an appeal to this court from the judgment entered thereon.

Plaintiff was employed by defendant city from October 1, 1952, to December 9, 1965. On May 13, 1965, plaintiff and several other off-duty firemen were called to assist with a fire in a business establishment at 1326 P Street. This fire was described as a tough one because of heavy concentration of smoke and ammonia fumes coming from the basement. Plaintiff went into the basement, where the fire was located, without a mask since none was available to him. He subsequently became ill, vomited, and experienced severe chest pains, with

radiation of the pain into his arms and neck. He rested a few minutes and tried to resume his activities, but the pain persisted and he was sent home. This was the first time he had ever experienced this type of chest pain, which city's medical expert from a later examination and the history described as angina pectoris. These pains abated after a short time, but subsequent thereto he had several bouts with both chest pains and nausea.

On five fire calls between May 15 and early October 1965, plaintiff experienced these chest pains in increasing intensity. He consulted a doctor on September 2, 1965, because of them. An electrocardiogram taken on that occasion did not disclose any unusual condition. The diagnosis given him was intercostal neuritis. He was given pills for treatment, but they did not help. While on duty during the day of October 6, 1965, he again experienced chest pains. That night he was on duty and slept at the fire station. He awoke about 1:30 a.m., October 7, with severe prolonged chest pains and an attack of nausea. He was permitted to return home by his superior about 4 a.m. He consulted a doctor about 6 a.m., and was ordered to the hospital. The diagnosis was myocardial infarction. He remained in the hospital for 15 days.

From the time of plaintiff's admission to the hospital on October 7, 1965, until December 9, 1965, he remained on the payroll of the defendant, but was paid his regular salary in the form of sick leave pay. His employment was terminated December 9, 1965, when his sick leave expired. On January 31, 1966, his doctor advised plaintiff that he had made his maximum recovery but would not permit him to return to his employment as a fireman. In February 1966, he took employment for a brief time as a guard at the Nebraska State Penitentiary. After 3 or 4 weeks he took employment with the Lincoln school system as a bus driver.

Plaintiff at no time received benefits of any nature under the Firemen's Pension Act. He personally re-

quested these benefits from the chief of the fire department and the city attorney. The firemen's union made a request for benefits for him from the fire chief, who is the executive head of the department. His attorneys subsequently made a written demand on the chief. The city attorney had Mr. Hooper examined for evaluation purposes 13 days subsequent to December 9, 1965, when his sick leave terminated. Benefits were denied on the theory that his disease did not arise out of his employment.

The nature of his duties, so far as material herein, are described by the city job description established in May 1964, as follows: "Work involves responsibility for the protection of life and property through firefighting activities usually performed under close supervision. Work requires performance of hazardous tasks under emergency conditions which may involve strenuous exertion under such handicaps as smoke and cramped surroundings." A desirable ability is: "Sufficient physical strength and agility and freedom from serious physical defects as indicated by a physical examination and the ability to perform arduous tasks under adverse conditions."

Plaintiff's two medical experts and the city's medical expert agree that plaintiff sustained a myocardial infarction, but could not fix the exact time that this myocardial infarction occurred. City's medical expert testified that there is evidence to support the conclusion that plaintiff's heart damage occurred on October 7, 1965, when he experienced prolonged chest pains during the early morning hours at the fire station. Plaintiff's treating physician testified that his employment was a factor in causing the myocardial infarction, and that absent this employment plaintiff would not have had any heart damage. He testified positively that there was a direct relationship between his duties as a fireman and the cause of the infarction. Both plaintiff's medical experts and the city's medical expert were of the opinion that

plaintiff had coronary arteriosclerosis for a considerable period of time prior to October 7, 1965, and that the myocardial infarction was a consequence of the arteriosclerosis. It was the opinion of plaintiff's medical experts that plaintiff's preexisting coronary condition was definitely aggravated by his employment, and materially contributed to his myocardial infarction. City's medical expert was equally positive that the myocardial infarction was not a result of his employment, although he did admit that emotional and mental stress were factors in the progression and aggravation of arteriosclerosis.

City sets out nine assignments of error, which we condense to two main categories: (1) The jurisdiction of the court over the subject matter; and (2) whether plaintiff's disease was contracted in the line of duty.

The jurisdictional question was first raised by an oral motion after plaintiff had concluded his case-in-chief. City's attack is predicated on the fact that plaintiff had not requested the Lincoln city council to grant a hearing under section 15-1006, R. S. Supp., 1963, to determine liability for permanent total disability. Section 15-1006, R. S. Supp., 1963, so far as material herein, provides: "(1) In case any such fireman or policeman shall become permanently and totally disabled from accident or other cause for the work said fireman or policeman was doing at the time of said accident or other disabling act, while in the line of duty, such fireman or policeman shall forthwith be placed upon the roll of pensioned firemen or policemen, at the rate of fifty per cent of his regular pay as defined in section 15-1001 paid monthly; * * * (3) In case of the temporary total disability of a fireman or policeman received while in the line of duty, he shall receive his salary during the continuance of such disability for a period not to exceed twelve months; Provided, if it shall be ascertained by the city council or other proper municipal authorities within twelve months that such disability has become permanent, then his salary shall cease and he shall be entitled to the bene-

fits of the provisions with reference to pensions in case of total and permanent disability contained in subsections (1) and (2) of this section."

The only reference to city council or other proper municipal authorities in the entire pension act is found in subsection (3), of section 15-1006, R. S. Supp., 1963. The determination to be made by them is whether or not temporary total disability received in the line of duty has become permanent. There was no hearing to determine any type of disability because city refused to recognize any employment-connected disease or disability, whether temporary or permanent. Consequently, plaintiff was paid no salary after October 7, 1965, within the meaning of the pension act, but was required to use up his accumulated sick leave.

City relies on Schaub v. City of Scottsbluff, 164 Neb. 805, 83 N. W. 2d 775, to sustain its position. That case, however, is distinguishable from the instant one on the facts. There, Schaub was admittedly only partially disabled on September 11, 1953, when he sustained a wrist injury. This became temporary total disability on April 4, 1954, after surgery, and remained so until August 1954, when he returned to work although still partially disabled. He continued to perform his duties until November 15, 1954, when he again became temporarily totally disabled. The city refused Schaub's request for pension rights on the theory that he could return to work and was not permanently disabled.

Here, plaintiff was hospitalized October 7, 1965, and never thereafter was able to return to work as a fireman. He was given sick leave pay from that date until his sick leave expired December 9, 1965, at which time his employment was terminated. City had plaintiff examined by its medical expert on December 22, 1965, or within 2 weeks thereafter. Plaintiff at no time received any disability benefits because city contended that his disability was not incurred in the line of duty. On January 26, 1966, city's personnel director, in an interoffice

memorandum, certified that plaintiff's employment was terminated because he was: "Not able to return to job after illness not contributed to job." While this is an interoffice memorandum, it shows the city's position on the disability.

Plaintiff requested his pension rights from the fire chief, who was the executive officer of the fire department, and also from the city attorney. The firemen's union requested benefits for him from the chief, and his attorney requested such benefits for him in writing. At all times the city has consistently maintained that the plaintiff's disability was not connected with his employment. This action was filed September 6, 1966, and the pleadings indicate that it was contested on the theory set out in city's answer, "* * * that the defendant's employment was not in any manner connected with his disability, if any."

What is meant by the words, "or other proper municipal authorities"? City argues they refer only to the mayor. Plaintiff argues in a city of the primary class they include the fire chief who is the official in charge of or responsible for all of the activities of the fire department. In this respect, it is of interest that the statute involved in Schaub v. City of Scottsbluff, *supra*, which was section 35-203, R. R. S. 1943, covering cities of the first class, provided for a determination by the board of fire and police commissioners or other proper municipal authorities. That case interpreted "other proper municipal authorities" as there used to mean the city council. With cities of the primary class, however, the provision is the city council or *other* proper municipal *authorities*. Obviously, this refers to authorities other than the city council. Without defining exactly who all may be included in this classification, we do hold it includes the executive head of the department involved, the fire chief.

City argues that the court acquired no jurisdiction over the subject matter because an original action for

declaratory judgment is not a proper remedy herein. Its position is that a fireman claiming disability benefits under the pension act must file a claim against the city pursuant to the provisions of sections 15-840 and 15-842, R. R. S. 1943, and if dissatisfied with the disposition of it, his remedy is limited to an appeal by petition in error to the district court.

Section 15-840, R. R. S. 1943, provides: "All claims against the city must be presented in writing with a full account of the items, verified under oath of the claimant or his agent, that the same is correct, reasonable, just and unpaid; and no claim shall be allowed unless presented, verified as herein provided, and read in open council. The vote of each councilman upon the allowance of any claim shall be entered upon the minutes. No claims arising on contract or tort exceeding the sum of twenty-five dollars shall be allowed until the same shall have been read in open council, and the name of the claimant, the amount and nature of the claim published once in a daily newspaper published and of general circulation in the city. Not more than ten words shall be used in stating the nature of such claim."

Section 15-842, R. R. S. 1943, provides: "No warrant shall issue for the payment of any such claim until the appeal is finally determined. In order to maintain an action for an unliquidated claim it shall be necessary, as a condition precedent, that the party file in the office of the city clerk within thirty days from the time such right of action accrued a statement of the amount of the claim, giving full name of the claimant, the time, place, nature, circumstances and cause of the injury or damage complained of. No appeal bond shall be required of the city by any court in case of appeal by the city, and judgment shall be stayed pending such appeal."

Section 25-21,150, R. R. S. 1943, provides, so far as material herein: "Any person * * * whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have deter-

mined any question of construction or validity arising under the * * * statute, ordinance, * * * and obtain a declaration of rights, status or other legal relations thereunder."

Dayton v. City of Lincoln, 39 Neb. 74, 57 N. W. 754, is of interest on the question as to whether or not plaintiff was required to file a claim against the city herein. There, the plaintiff brought an original action for damages to property by reason of change of grade in a street. The city raised the jurisdictional question because no claim had been filed with the city. With exceptions not material herein, the statute involved in that case is substantially the same as those cited by city herein. The holding in that case, particularly the discussion of the limitation of the filing date, is sufficient to show that on an unliquidated claim of this nature, other proceedings are possible.

It cannot be denied that there are many complicated questions of statutory construction and interpretation involved in the rights claimed by the plaintiff herein. We determine that under the facts of this case a declaratory judgment action was a proper procedure.

We now reach the fact question, whether plaintiff's disease was contracted in the line of duty. In Campbell v. City of North Platte, 178 Neb. 244, 132 N. W. 2d 876, which involved a fireman who died of coronary artery disease, we held that under the provisions of the Firemen's Pension Act for a city of the first class, a fireman received injuries while in the line of duty if he contracts disease while in the discharge of his duty. This is equally true under section 15-1006, R. S. Supp., 1963.

The dispute herein arises on the causal connection between the conditions of the employment and the disease which caused the disability. City predicates its position on the fact that medical science does not know the primary cause of arteriosclerosis. City states: "The etiology is officially listed as 'unknown.'" City argues that it is only possible to name certain factors which are

believed to contribute to its causation. It is undisputed that plaintiff had several of the factors listed as possible contributors, such as regular tobacco intake and high serum cholesterol. These would have no causal relationship to the employment. It is also undisputed that plaintiff was subjected to abnormal stress and strain. All of the medical experts agree that physical and emotional stress is one of the contributing factors to arteriosclerosis, and plaintiff's medical experts testified to a direct causal relationship between plaintiff's heart condition and his employment.

Except for the testimony of city's medical expert that there was no causal connection herein, this case is a stronger one on the facts than Campbell v. City of North Platte, *supra*. Here, plaintiff experienced sharp chest pains on every serious fire call after they first occurred on May 13, 1965, at the 1326 P Street fire. City's medical expert, from the history, diagnosed these pains as angina pectoris. One of plaintiff's medical experts testified one might have angina pectoris and not have any heart damage. The electrocardiogram of September 2, 1965, did not disclose heart damage. All medical experts, however, agree that as of October 7, 1965, plaintiff had a myocardial infarction, but disagree on the causal relationship with his employment.

In this state of the record, we are aided in determination of the issue by the rule that where there is irreconcilable conflict on a material issue, this court will, in determining the weight of the evidence of witnesses who appear in court to testify, consider the fact that the trial court observed them and their manner of testifying and must have accepted one version of the facts rather than the other. Peters v. Halligan, 182 Neb. 51, 152 N. W. 2d 103.

City's medical expert testified that the arteriosclerotic condition existed over a long period of time. Still, we are met with the fact that the heart damage or myocardial infarction was not present on September 2, 1965,

but was present after plaintiff experienced prolonged chest pains on October 7, 1965. It is a reasonable conclusion that whatever condition existed was aggravated sufficiently to produce the heart damage. One of plaintiff's medical experts identifies the conditions of employment as the aggravating cause. Whether the employment caused the heart attack or aggravated a preexisting condition thereby causing it, makes little difference in the determination of the issue herein. In either event, the heart damage was causally connected with plaintiff's employment.

City argues that plaintiff was not totally disabled. City's medical expert testified that he would permit the plaintiff to return to his employment to determine that question. Both of plaintiff's medical experts were equally positive that it would be too great a risk to permit plaintiff to return to fire fighting. City further argues that plaintiff is not totally disabled because he is able to drive a school bus, and cites Schaub v. City of Scottsbluff, 164 Neb. 805, 83 N. W. 2d 775, which holds: "A fireman is permanently and totally disabled under the Firemen's Pension Act when the, disability from which he suffers renders him permanently unable to obtain, hold, or do any substantial amount of remunerative work, either in his previous occupation or in any other established and recognized field of employment for which he is fitted."

The statute in effect at the time of Schaub v. City of Scottsbluff, *supra* (§ 15-1006 (1), R. R. S. 1943), read as follows: "In case any such fireman or policeman shall become, permanently and totally disabled, from accident or other cause, while in the line of duty, such fireman or policemen shall forthwith be placed upon the roll of pensioned firemen or policemen * * *."

In 1963, that statute was amended to read as follows: "In case any such fireman or policeman shall become permanently and totally disabled from accident or other cause *for the work said fireman or policeman was doing*

*at the time of said accident or other disabling act,* while in the line of duty, such fireman or policeman shall forthwith be placed upon the roll of pensioned firemen or policemen * * *." § 15-1006(1), R. S. Supp., 1963. (Italics supplied.)

It is evident that the Legislature by this amendment undertook to define what it meant by permanent total disability, and restricted it to the work said fireman or policeman was doing at the time of said accident or other *disabling* act. The holding in Schaub v. City of Scottsbluff, *supra,* is therefore not applicable herein.

For the reasons given, the judgment herein should be and hereby is affirmed.

AFFIRMED.