## Crawford, Appellant, *v.* Philadelphia.

Argued November 14, 1961. Before BELL, C. J., MUSMANNO, JONES, COHEN, BOK, EAGEN and ALPERN, JJ.

*Alexander F. Barbieri,* for appellant.

*Levy Anderson,* First Deputy City Solicitor, with him *Alfeo P. Libetti,* Assistant City Solicitor, *James L. Stern,* Deputy City Solicitor, and *David Berger,* City Solicitor, for City of Philadelphia, appellees.

OPINION BY MR. JUSTICE MUSMANNO, January 2, 1962:

On December 29, 1954, the City Council of Philadelphia enacted an ordinance providing for payment, in $200 monthly installments, of $10,000 to widows or dependent children or parents of firemen and policemen killed in line of duty or in the performance of an "heroic deed which involves a special hazard or risk." (Code of General Ordinances of the City of Philadelphia, §21-105, pages 770-771).

On December 23, 1955, Robert J. Crawford, a Philadelphia fireman, lost his life while engaged in fighting a fire. His widow, Mrs. Edna Mae Crawford, applied for benefits assertedly due her under the ordinance. The Award Committee, designated by the ordinance, to determine the applicability of the provisions of the ordinance, took no immediate or even delayed action on Mrs. Crawford's application, whereupon she instituted an action in mandamus to compel the committee to act.

Hearings were now held and on July 22, 1959 the Award Committee decided that Mrs. Crawford was entitled to the award. Payments were not begun, however, until September 1, 1959. The widow then filed an amended complaint in assumpsit seeking payments dating back to the date of Crawford's death. The City of Philadelphia and the Award Committee filed preliminary objections asserting that the complaint failed to set forth a cause of action because the ordinance "clearly provides that no payment shall be made until the Award Committee has certified to the Director of Finance that an award has been made."

The Court of Common Pleas No. 2 of Philadelphia County sustained the objections and the plaintiff appealed. It will be seen from what has been said that the question to be decided by this Court is: Do the monthly payments of the award, once adjudicated, begin as of the date of the death of the decedent or when the Award Committee makes its decision?

At the outset it must be noted that the defendants erred in their answer when they said the award may not be made *"until"* the Award Committee makes its decision. The ordinance does not so state. The language in question reads: "No payments shall be made pursuant to the terms of this ordinance *unless* the Award Committee shall have first certified in writing to the Director of Finance of the making of such an honor award."

The difference between "until" and "unless" is the difference between Alpha and Omega. If the ordinance said, as the appellees declared in the court below, that the payments were not to be made until the Award Committee approved the award, it could with some rationalization be argued that the payments should not begin until the award became a documented fact. However, the word "unless" comports something entirely different. The word "unless" makes of the

committee's award a catalytic agent which brings the $10,000 into being and payable to the beneficiary.

When? The Ordinance is silent as to the beginning date but that silence is patently due to the fact that it would be superfluous to state what is obvious. Some things are so mountainously self-evident that to announce them is to "guard a title that was rich before, to gild refined gold, to paint the lily." As the drafter of the ordinance wrote out section 1 he probably was not thinking of the conversation between the Earl of Salisbury and King John when these oft-quoted lines were first spoken, but even unconsciously he must have had in mind that it would be "wasteful and ridiculous excess" to explain that the payments of $200 per month, because of the death of the subject fireman, were to begin as of the date of his death. What other date would or could it be?

Section 1 of the ordinance reads: "The Council hereby provides that the sum of ten thousand ($10,000) dollars shall be paid to the surviving widow or dependent children or dependent parents of every fireman, policeman, or park policeman who is *killed* in the course of responding to an alarm, fighting a fire, apprehending a criminal, or in the course of performing an heroic deed which involves a special hazard or risk: Provided, however, That payments of the said sum shall be made at the rate of $200 per month for a period of fifty months." (Emphasis supplied).

The one word around which everything else in the quoted paragraph revolves, like the circles of illumination surrounding a torch, is "killed." Without "killed", the paragraph collapses as a wheel falls apart with the destruction of the hub. Thus, whatever payments are to be made under this ordinance must logically begin as of the day the principal was *killed*.

The ordinance has two main concepts: (1) To award posthumous honor to a public servant who

heroically sacrifices his life in the performance of duty; (2) to care for the widow and the dependents who have now been deprived of the protecting strength of his arm and the staff of life with which he provided them. Every monument erected to a deceased war hero commemorates the *date of his death,* not the day when the commemorating committee gets around to proclaiming the heroic deed, which could be delayed not only for a year or two but even for a couple of centuries.

It is true that the preamble of the ordinance states the City "desires to encourage the heroic acts of these men and to give recognition to and honor those who give their lives on behalf of the citizens of our City," but the manner in which the encouragement is to be effected is to assure firemen and policemen that in the event of fatality, their surviving widows and dependents will be cared for.

The need of the widow in this case began as soon as the hands of her breadwinning husband were stilled, not when the Award Committee assembled. When Council said that $10,000 shall be paid to the surviving widow, it intended that the payments were to begin as of the date she became a widow. Her rights, when they were ascertained, thus became vested as of the moment she became a widow, that is when the light of life went out of her husband's eyes. The award committee here waited for three and one-half years before making a decision. If the payments are to begin only as of the date of the committee's decision, the committee, by unduly delaying the decision, may deprive the widow of her award entirely. The committee could wait until help for the widow would be useless. Why then have the ordinance at all?

No one has explained why the Award Committee did not act with greater celerity. The appellees argue that there was a question as to whether Crawford lost

his life because of inhaling smoke at the fire he was fighting, or because of a heart condition. However, now that the Award Committee has decided that Crawford's death was due to violence encountered at his post of danger and not by any pre-existing disease, the appellees cannot go on still raising the smoke of controversy as to how the fireman met his death. When the committee spoke, the duty automatically devolved upon the City to pay the amounts specified by the ordinance for the purposes specified by the ordinance.

The *logical date* for the initiation of the payments is the date the loss occurred for which the award was made, namely, the date the fireman perished.

In *Linaka v. Firemen's Pension Fund*, 346 Pa. 459, 462, Chief Justice MAXEY, speaking for the Court, said: "There must be a definite date when the right to the pension provided for arises. The logical date is the date when the thing happens which makes a benefit payment or a pension necessary. In the case of sick benefits, that date is when the sick member becomes incapacitated by his sickness. Of course, the Society's by-laws can fix a different date, such as, for example, one week after the disability arises, but if there is any ambiguity about the provision fixing the date for the arising of the right to the benefit provided for, it is a reasonable inference that the date intended is the date referred to above as the 'logical date.' "*

---

* The appellees argue that the *Linaka* case is inapplicable because in that case the fireman had contributed to a pension fund whereas there was no such contribution here. The argument is unavailing. The important fact is that once the Award Committee determined that the death of Crawford on December 23, 1955, was occasioned while fighting a fire under the ordinance providing for an award under such circumstances, the widow, under the ordinance, became entitled to the award. Whatever discretion the Award Committee had in the matter was exercised and the widow's right to the award became fixed.

The fact that a certain amount of minimal time is naturally needed to ascertain whether the award is to be made or not has nothing to do with the date the payments fall due, when the decision is affirmatively made the award is justified. In contested workmen's compensation cases, pension and insurance matters, (where death is involved) benefits are invariably forthcoming as of the date of death of the principal, once it is determined they are to be paid. Any other interpretation would not be consistent with honesty and fair dealing. In ascertaining the intent of a legislative body one must assume it did not propose an unreasonable or absurd result. (*Gagliardi v. Ambridge Borough*, 401 Pa. 141).

The lower court made the strange observation that to order the payment of all installments back to the date of Crawford's death "and to be faced in future cases with the task of computing varying amounts accumulated from the date of death, would not only create disorder but would be oppressive and inequitable and unreasonable." Where would be the disorder? What would be oppressive about paying the widow of a fireman what the City Council has decided should be paid to her? The truth reposes in the exact reverse of what the court said. It would be strange to the point of grotesqueness for the City Fathers to authorize the payment of certain sums to the widow of a city hero but to prohibit the payments for the periods when she needs them most.

The lower court said further: "if the interests of the general public would be injuriously affected, or if the object sought to be obtained is inequitable, or oppressive or excessively burdensome, or *likely to create disorder and confusion* in municipal or governmental departments, the courts may use their discretion and refuse to issue a writ of mandamus." (Emphasis supplied.)

The only "disorder and confusion" in the case is due to the unreasonable delay of the Award Committee in appraising Mrs. Crawford's claim. Nothing remains now to be done except to pay the money. In *Garratt v. Philadelphia,* 387 Pa. 442, Justice BELL, now Chief Justice, said: "If a fireman is unquestionably killed in the course of fighting a fire, the Award Committee has merely a ministerial and not a discretionary duty to make the award to his widow."

The appellees point out that after the *Garratt* decision was rendered the ordinance was modified (in 1958) to provide that the Award Committee shall have the "sole and exclusive" power to determine whether certain conditions have been met in order to make an award. However, even if such amendment was applicable to the instant claim which arose prior to the amendment, the modifications therein included do not change the principle that once the Award Committee decides that the widow of a deceased fireman is entitled to the award, the payment of the award from then on becomes a ministerial function and is no longer discretionary with the committee.

The judgment is reversed and the cause remanded to the court below for issuance of the writ prayed for.

Mr. Justice COHEN dissents.